PHILLIPS v. THE CITY OF COUNCIL BLUFFS.

1. **Cities and Towns:** CHANGE OF GRADE OF STREET: DAMAGES TO
LOT OWNERS: ASSESSMENT AND PAYMENT OF A CONDITION PRECE-
DENT: CITY UNDER SPECIAL CHARTER. Before a city can make a phy-
sical change in the established grade of a street, it must, under section
469 of the Code, have the damages to abutting lot-owners assessed, and
must pay or tender such damages. This section of the Code is made
applicable to cities acting under special charters by section 479, and its
provisions are not repealed as to such cities by sections 8, 9 and 10 of
chapter 116, of the Laws of 1876—the provisions thereof running parallel
with, and not contrary to, the provisions of said section.

2. ——: ——: ——: CHOICE OF REMEDIES. Where a city is about to
make a physical change in the established grade of a street, without the
assessment and payment of damages to abutting lot-owners, the latter
may allow the change to be made, and rely upon actions at law to re-
cover their damages; (*Hempstead v. City of Des Moines*, 52 Iowa, 303:
*Noyes v. Mason City*, 53 Id., 418;) but they may, also, have a writ of
injunction to restrain the city from making the change in the first in-
stance.

*Appeal from Pottawattamie District Court.*

WEDNESDAY, JUNE 4.

THE petition states that the plaintiff is the owner of cer-
tain lots in the said city, which abut on Fourth and Bluff
streets, and that said lots are occupied by petitioner as his
homestead; that in 1869 the defendant passed an ordinance
establishing the grade of Bluff street, and that the plaintiff
made improvements on said lots according to the grade then
established; that in 1881 the defendant passed an ordinance
changing said grade in such manner as to cause great and
irreparable injury to petitioner's property; that said ordi-
nance is void, because it was passed "without the petition of
the owners of two-thirds in value of the property on both
sides of said street asking for a change in the grade thereof;"
that the damages sustained by the plaintiff have "not been
assessed, paid or tendered to him, as provided by law;" and

that the defendant "is now proceeding to carry into effect the provisions of said ordinance."

An injunction was asked restraining the defendants from making or changing said grade, and for other relief. The defendant answered the petition, and there was a trial to the court, a finding for the defendant, and a decree dissolving an injunction previously granted, and dismissing the petition. The plaintiff appeals.

*Wright & Baldwin*, for appellant.

*W. S. Mayne*, for appellee.

SEEVERS, J.—I. Counsel for the appellant insist that the ordinance is void because it was passed without a petition therefor signed by two-thirds of the property owners. Counsel for the appellee insists that the petition was so signed, and, if not, that injunction is not, but that *certiorari* is, the proper remedy. We deem it unnecessary to determine this question.

II. The only remaining question discussed by counsel is, whether the damages sustained by the plaintiff must be assessed, paid or tendered before the defendant can proceed to make a physical change in the grade, as contemplated by the ordinance. Section 469 of the Code provides that, where a. grade has been established, and improvements have been made in accordance therewith, a city cannot alter such grade in such manner as to injure or diminish the value of the property so improved, unless it pays the damages caused by the change. The damages are to be assessed by three commissioners, and it is provided that "no such alteration of grade shall be made until said damages so assessed shall have been paid or tendered to the owner of the property so injured or damaged."

The defendant is organized under a special charter, and counsel for the appellee insists that section 469 of the Code

has no application to cities so organized, but applies solely to cities organized under the general incorporation law.

But section 479 of the Code contains the following words: "The provisions and powers conferred in this chapter, from section 465 to 479, inclusive, shall apply to cities acting under special charters."

It is apparent that the provisions of section 469 of the Code do apply to cities acting under special charters, and that.the assessment of the damages sustained, in the mode provided, and the payment or tender of the amount so assessed to the property owner, are conditions precedent to the physical alteration of an established grade.

The agreed statement of facts shows that the plaintiff's damages have not been assessed, paid or tendered. The defendant, therefore, in proceeding to alter the grade, has exceeded the authority conferred upon it, and we are unable to see that the plaintiff has any adequate remedy except to enjoin the city from making the alteration until it has the damages assessed, as provided by statute, and pays or tenders the amount so ascertained to the plaintiff. Doubtless, the plaintiff might have allowed the defendant to make the alterations, and then brought suit to recover the damages sustained. *Hempstead v. The City of Des Moines*, 52 Iowa, 303; *Noyes v. The Town of Mason City*, 53 Id., 418. So far there is no serious difficulty; but in 1876, the general assembly passed an act entitled "An act relating to cities organized and existing under special charters, conferring additional powers, and amending the charters of such cities." See Miller's Code, pages 141–146. Sections 8, 9 and 10 of the statute are substantially the same as section 469 of the Code, except that the provision in relation to the payment or tender of the damages is omitted. Does this last statute repeal by implication section 469 of the Code, as to cities acting under special charters? There is no express repeal of any prior or existing statute. Why the latter was enacted while the former was in force is a problem we are unable to solve, unless the pro-

vision above quoted, as forming a portion of section 479 of the Code, was overlooked. Be this as it may, we think, as both statutes may be enforced, and as there is no inconsistency in their provisions, that both should be permitted to stand. All that can be said is that they are substantially the same, but that section 469 of the Code contains a provision that is not found in the last statute enacted. They both, however, apply to the same subject-matter, and a city acting under a special charter may proceed under either to have the damages assessed, but, when it has gone thus far under the statute passed in 1876, then the provisions of section 469 of the Code apply as to the payment or tender of the damages assessed. We the more readily adopt this conclusion, because the act of 1876 provides that when the assessment is made the city may annul the same, in which case "all the proceedings shall be void." If, however, in the meantime, the established grade has been physically altered, then the property owner has no other remedy except to bring an action for the damages sustained. We think the intent of the act of 1876 was that the property owner should not be driven to take this course, but that he may require the city to pursue the steps required in their order; that is, *First*, to provide for changing the grade, by ordinance or otherwise; *Second*, to have the damages assessed, and either annul or confirm the assessment before proceeding to make the physical alteration of the existing grade; and we see no hardship in requring the city to go a step further, and that is, either to pay or tender the damages assessed, before proceeding to make a physical change of the grade, if the property owner objects to its doing so. The result is that the judgment of the district court is

REVERSED.