STATE OF NORTH DAKOTA, *ex rel.,* FRANK OHLQUIST, Plaintiff,
    *v.* JAMES K. SWAN, as Sheriff of Grand Forks County,
    Defendant.

**1. Intoxicating Liquors — Article 20 of the Constitution of North Dakota.**

When a party was held by a magistrate for a violation of the laws against selling intoxicating liquor as a beverage without license, in force on that subject when the constitution was adopted, and committed, in default of bail, and brought before this court on *habeas corpus* proceedings, claiming that he was unlawfully restrained of his liberty, because all pre-existing laws against selling intoxicating liquor without license were repealed by article 20 of the constitution, (being prohibition article,) as being repugnant thereto, *held* that, if article 20 of the constitution be self-executing and operative, it repeals the pre-existing license law, including penalties.

**2.  Article 20 Not Self-Executing.**

But, *held, further*, that said article is not self-executing; that it cannot be enforced by the penalties in the former license law; that the provision in that article that "the legislative assembly shall by law prescribe regulations for the enforcement of the provisions of this article, and shall thereby provide suitable penalties for the violation thereof," clearly indicates the intent of the constitutional convention that supplemental legislation should be the means of enforcing said article.

**3.  Article 20 Does Not Repeal License Law.**

*Further*, that, until such supplemental legislation is had, article 20, while prohibitory in form, is in fact only a declaration of principles, and without force to repeal the prior license law; and hence relator's restraint is not unlawful.

(January Term 1890.)

*A*PPLICATION for writ of *habeas corpus.*

Messrs. Bangs and Fisk for the relator argued:  § 217 of the Constitution of this State repealed all laws licensing the sale of intoxicating liquors, because the license laws made to regulate traffic in such liquors are repugnant to the prohibition established by the Constitution; citing § 24 of the Enabling Act; § 2 of the schedule of the State Constitution; Norton v. Taxing Dist. of Brownsville, 9 Sup. Ct. Reporter 322; State v. Hanley, 25 Minn. 429; Ty. *ex rel.*, McMahon, v. O'Connor, 41 N. W. Rep. 753.

Messrs. Greene and Hildreth, also for the relator, argued: The Enabling Act and the State Constitution expressly repeal the entire system of Territorial laws regulating the traffic in alcoholic liquors; citing United States v. Tynen, 11 Wall. 88; Fraser v. Alexander, 75 Cal. 153; Norris v. Crocker, 13 How. (U. S.) 429.

The penalties for violating the license law cannot survive that law; citing Maryland v. R. R. Co., 3 How. 534; Van Inwogen v. Chicago, 61 Ill. 31; United States v. Tynen, *supra.*

John M. Cochrane, states attorney of Grand Forks county, for the respondent, argued:  That the Constitution is not in conflict with the license laws; citing Ty. v. O'Connor, *supra*, and Ty. v. Pratt, 43 N. W. Rep. 714; Prohibitory Amendment Cases, 24 Kan. 723.

Even if part of the license law of 1879 is repealed by the Constitution part of it remains in force.

Until some act is passed pursuant to article 20, of the Constitution, the license laws remain in force; citing Allbyer v. State, 10 O. St. 588; Cooley's Const. Lim. 76; Black on Const. Prohibition 181, and many other cases.

George F. Goodwin, Attorney General, and Jesse A. Frye, states attorney for Stutsman county, also for the respondent, argued: Article 20 of the Constitution is in full force and effect: §§ 11 and 20 of the schedule. That article is a complete law and is self-executing: Cooley Const. Lim. 220; Cooley Const. Lim. 99 to 103.

Section 2 of the Schedule continued in force that part of the license laws fixing penalties; citing Benner v. Porter, 9 How. 239; State *ex rel.*, Hunt v. Meadows, 1 Kan. 90; Franklin v. Westfall, 27 Kan. 614; State v. Wilcox, 19 Am. Rep. 536; Prohibitory Amendment Cases, *supra.*

Even if article 20 repeals the whole system of license law, still said article makes the sale of such liquors a crime, a misdemeanor, and such crime is punishable under § 6213 of the Compiled Laws.

BARTHOLOMEW, J. On the 22d day of January, 1890, the relator, Frank Ohlquist, applied to this court for a writ of *habeas corpus*, alleging that he was unlawfully restrained of his liberty by James K. Swan, sheriff of Grand Forks county. The petition states that the relator was duly arrested on January 21, 1890, upon a warrant issued by a justice of the peace of Grand Forks county, upon a complaint charging the relator with having, on the 10th day of January, 1890, sold intoxicating liquors in said county, in quantities less than five gallons, without having first obtained a license and given a bond therefor, as provided in § 1, c. 26, Laws Dak. 1879; that upon the hearing before said justice the relator was duly held to appear before the district court of said county, and admitted to bail for such appearance in the sum of $500. The relator, failing to give such bail, was by such justice duly committed to the custody of the respondent, as sheriff of said county. Relator, in his petition, claims that his imprisonment is illegal because—*First*, the

complaint upon which the warrant was issued does not state facts
sufficient to constitute a public offense; and, *second*, that chapter
26, Laws 1879, for the violation of which relator is restrained
of his liberty, is in conflict with article 20 of the constitution of
the state of North Dakota, and consequently repealed thereby.
The writ was issued January 22, 1890. On the 30th day of Jan-
uary, 1890, respondent made return to said writ, admitting the
restraint, and alleging the arrest and proceedings before the mag-
istrate in justification thereof. Relator moved to quash the re-
turn.

The decision of the question hinges upon the effect, if any,
that article 20 of the constitution has upon pre-existing statutes.
The act of congress known as the Omnibus Bill, and under
which North Dakota became a state, contains the following:
"And all laws in force, made by said territories at the time of
their admission into the Union, shall be in force in said
states, except as modified or changed by this act, or by the con-
stitution of the states respectively." Omnibus Bill, § 24. § 2
of the schedule of the constitution of this state reads as follows:
"All laws now in force in the territory of Dakota which are not
repugnant to this constitution shall remain in force until they
expire by their own limitation, or be altered or repealed."
From the first organization of the territory of Dakota it was the
policy of its citizens to restrain the sale of intoxicating liquors.
The earlier enactments on this subject are codified as chapter
35, Pol. Code 1877, which is a complete license law. The first
section is as follows: "It shall be unlawful for any person, by
himself, by agent, or otherwise, to sell in any quantity intoxi-
cating liquors, to be drank in, upon, or about the premises
where sold, or to sell such intoxicating liquors to be drank in
any adjoining room, building, or premises, or other places of
popular resort, connected with said premises where sold, with-
out having first obtained a license and given bond as hereinafter
provided." § 10 of that act recites the penalties for a violation
thereof, declaring such violation a misdemeanor punishable by
fine of not less than $20 nor more than $150. In 1879 the ter-
ritorial legislature passed a new and complete act upon this sub-
ject, known as "Chapter 26, Laws 1879," and being the law

under which relator is charged.    The act is very similar to chapter 35, Pol. Code 1877.    The first section of the former law, before quoted, is changed by inserting an additional provision, making it unlawful to sell intoxicating liquors, for any purpose, in any quantity less than five gallons, without first obtaining a license, etc.; and the penalty for a violation of the law is increased to not less than $100 nor more than $300 for each and every offense, or imprisonment not exceeding 60 days in the county jail, or both, in the discretion of the court.    See § 11 c. 26 Laws 1879.    In 1887, chapter 70, Laws 1887, known as the "Local Option Law," was passed by the territorial legislature. By the provision of that law the people of any county could, by a majority vote, absolutely prohibit the issuance of any license to sell liquors in such county; and § 5 of that act provided that, "in addition to the penalties now prescribed by law, any person or persons who may sell any intoxicating liquors without a license having been duly granted as provided by law, or where the license is granted in violation of this act, shall be restrained from so doing by proper injunction," etc.    The supreme court of Dakota territory in Territory v. Pratt, 43 N. W. Rep. 711, and in Territory v. O'Connor 41 N. W. Rep. 746, held that chapter 70 continued in force all the penalties contained in chapter 26 Laws 1879, and that the injunctional feature was additional and cumulative.    The same legislature that enacted the local option law, evidently fearing that the position might be taken that the penalties prescribed in chapter 26, Laws 1879, pre-supposed the power to obtain a license, amended the first section of said chapter 26 to read as follows:   "It shall be unlawful for any person, by himself, by agent, or otherwise, to sell, in any quantities, intoxicating liquors to be drank in, upon, or about the premises where sold, or to sell such intoxicating liquors to be drank in any adjoining room, building or premises, or other place of popular resort connected with such premises where sold, or to sell such intoxicating liquors, for any purpose, in any quantity less than five gallons, without first having obtained a license and given a bond as hereinafter provided; provided, that intoxicating liquors shall not be sold in any quantity, where no license is granted by the board of county

commissioners, except as provided for in § 13,"—with another proviso immaterial to this case. § 13 of said act relates to druggists.

From this legislation it is apparent that the original determination of the citizens of Dakota territory to restrict the liquor traffic has constantly augmented, and such augmentation is seen in the increased restriction and increased penalties with which they have hedged the traffic about. No backward step has been taken. Such was the state of the law on that subject when the constitutional convention of North Dakota met, in July, 1889. That convention, with full knowledge of the past legislation, crystalized what it believed to be the desire of the people of North Dakota into article 20 of the proposed constitution, which is as follows: "No person, association, or corporation shall, within this state, manufacture, for sale or gift, any intoxicating liquors; and no person, association, or corporation shall import any of the same, for sale or gift, or keep or sell, or offer the same for sale or gift, barter or trade, as a beverage. The legislative assembly shall by law prescribe regulations for the enforcement of the provisions of this article, and shall thereby provide suitable penalties for the violation thereof." This article was adopted as a portion of the constitution. Relator takes the broad position that chapter 26 of the Laws of 1879, as amended, is repugnant to the above article, and under § 2 of the schedule said chapter is no longer in force, or at least that said chapter is "changed" and "modified" by said article, in so far as it provides for the issuance of license, and hence cannot stand under the provision of the Omnibus Bill as a licensing statute; and further, as the evident intent and purpose of said chapter 26 was to establish a license system, that when said system is abrogated all penalties for its violation necessarily fall with it. The position of relator leads to the inevitable conclusion that there is to-day, in North Dakota, no law by which the open and notorious sale of intoxicating liquors for any purpose, and in any quantity, can be punished. We may go further. Article 20 provides that the "legislative assembly shall by law prescribe regulations for the enforcement of this article, and shall thereby provide suitable penalties for the violation there-

of." The obligation thrown upon the legislature is a moral obligation only. Cooley, Const. Lim. (4th Ed.) 100. It follows, then, on relator's theory, that the constitutional convention, which sought to give the state absolute prohibition, in fact gave it untrammeled liquor traffic, and provided that such untrammeled traffic should continue indefinitely, unless some legislature, to be elected in the future, should voluntarily elect to check the flood of intoxicants that the constitution turned loose upon the state. Such a conclusion is so at variance with all past legislation on the subject, so at variance with the declared wish of the voters of the state, so at variance with the intent and expectation of the framers of our constitution, that this court ought not to reach it, unless forced thereto by the clear rules of construction, or the obvious meaning of the language employed. It is clear that if chapter 26, Laws 1879, be repealed, such repeal is by implication, and not by express terms. Repeals by implication are not favored in law. Gordon v. People, 44 Mich. 485, 7 N. W. Rep. 69; Connors v. Iron Co., 54 Mich. 168, 19 N. W. Rep. 938; Phillips v. Council Bluffs, 63 Iowa, 576, 19 N. W. Rep. 672. Still, it is a well-settled rule that where the subsequent statute covers the same ground, and the entire ground, covered by the prior statute, and is a complete law in itself, that the subsequent statute repeals the former by implication. U. S. v. Tynen, 11 Wall. 88; Fraser v. Alexander, 75 Cal. 153, 16 Pac. Rep. 757; Schneider v. Staples, 28 N. W. Rep. 145. It is equally well settled that if such subsequent statute do not cover the entire ground covered by the former, or be not a complete law in itself, no repeal by implication will follow. Breitung v. Lindauer, 37 Mich. 217; U. S. v. Tynen, *supra.*

In the light of these elementary principles, we will examine the question of the repeal of the license law in force when North Dakota became a state. Our statutory definition of "law" is in substance in accord with that by Sir William Blackstone, to-wit, "a rule of civil conduct, prescribed by the supreme power in a state, commanding what is right and prohibiting what is wrong." 1 Blackstone Comm. 53. And Blackstone, in his introduction to his Commentaries, (book 1, p. 53,) says: "It remains, therefore, only to consider in what manner the law is said to ascer-

tain the boundaries of right and wrong, and the methods which it takes to command the one and prohibit the other. For this purpose every law may be said to consist of several parts: One declaratory, whereby the rights to be observed, and the wrongs to be eschewed, are clearly defined and laid down; another directory, whereby the subject is instructed and enjoined to observe those rights, and abstain from the commission of those wrongs; a third remedial, whereby a method is pointed out to recover a man's private rights, or redress his private wrongs; to which may be added a fourth, usually termed the 'sanction' or 'vindicatory' branch of the law, whereby it is signified what evil or penalty shall be incurred by such as commit any public wrongs, and transgress or neglect their duty." And again, on page 57, he says: "Of all the parts of a law, the most effectual is the vindicatory; for it is but lost labor to say, 'Do this, or avoid that,' unless we also declare, 'This shall be the consequence of your non-compliance.' We must therefore observe that the main strength and force of a law consists in the penalty annexed to it. Herein is to be found the principal obligation of human laws." Measured by this standard, it is very clear that article 20 does not constitute a law. The "main strength and force" and "principal obligation" are wanting. The article contains only the declaratory and directory portion of the law, and lacks the remedial and vindicatory. It is evident that, were we still a territory, and had a subsequent legislature passed an act containing just what is found in article 20, and no more, such act would be powerless to repeal any existing statute on the subject, particularly where the legislature that passed the act publicly proclaimed its futility, by requesting a subsequent legislature to give the act life and force. It remains, then, to be seen whether article 20 can have greater repealing force as a constitutional provision than it would have as a statute.

In Cooley, Const. Lim. (5th Ed.) 98 *et seq.*, it is said: "But, although none of the provisions of a constitution are to be looked upon as immaterial, or merely advisory, there are some which, from the nature of the case, are as incapable of compulsory enforcement as are directory provisions in general. The

reason is that, while the purpose may be to establish rights or to impose duties, they do not, in and of themselves, constitute a sufficient rule by means of which such right may be protected, or such duty enforced. In such cases, before the constitutional provision can be made effectual, supplemental legislation must be had; and the provision may be in its nature mandatory to the legislature to enact the needful legislation, though back of it there lies no authority to enforce the command. Sometimes the constitution in terms requires the legislature to enact laws on a particular subject; and here it is obvious that the requirement has only a moral force. The legislature ought to obey it; but the right intended to be given is only assured when the legislation is voluntarily enacted. Illustrations may be found in constitutional provisions requiring the legislature to provide by law uniform and just rules for the assessment and collection of taxes. These must lie dormant until the legislation is had. They do not displace the law previously in force, though the purpose may be manifest to do away with it by the legislation required.   *   *   *   *   *   A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. Thus a constitution may very clearly require county and town government; but if it fails to indicate its range, and to provide proper machinery, it is not in this particular self-executing, and legislation is essential. Rights in such a case may lie dormant until statutes shall provide for them, though, in so far as any distinct provision is made which by itself is capable of enforcement, it is law, and all supplementary legislation must be in harmony with it." Cooley on Principles of Constitutional Law, speaking of the thirteenth amendment to the federal constitution, prohibiting slavery and involuntary servitude, says, on page 219: "The same amendment also provides that 'congress shall have power to enforce this article by appropriate legislation.' Whether this provision has any importance must depend upon whether the prohibitory

clause itself falls short of furnishing a complete and sufficient protection. A constitutional provision is sometimes, of itself, a complete law for the accomplishment of the purpose for which it was established, and sometimes it merely declares a principle which will be dormant until legislation is had to give it effect. When the former is the case, the provision is sometimes spoken of as 'self-executing.' Nearly all the provisions of the federal constitution which confer legislative or judicial power are inoperative for the practical purposes intended, until legislation under them has given the means, and pointed out the methods, by which the powers shall be exercised. * * * A prohibition of a power in the federal constitution defeats any attempt of its exercise; and any court, state or federal, that may have cognizance of a case in which the power can come in controversy, whether directly or incidentally, must take notice of and act upon the prohibition. Thus the mere declaration that 'no bill of attainder shall be passed' has been found ample to protect all the people against legislative punishment in cases not within their proper cognizance, though no legislation has ever been had looking to its enforcement. The case of the prohibition of the laws impairing the obligation of contracts is a still more strong illustration of the force of certain provisions standing independently. In a multitude of forms, laws have appeared which were supposed to violate this provision; and in no case has a court, either state or national, had any difficulty in dealing with it, or in declaring the law null if it was believed to be within the prohibition. Such a provision may well be declared self-enacting. It is a complete and perfect law in itself, which all courts must take notice of, and enforce, whenever a disregard of it comes to their judicial notice, without any statute requiring or expressly permitting it." Williams v. Mayor, 2 Mich. 560, was an action brought to restrain the collection of an assessment imposed, by order of the mayor and board of aldermen of Detroit, upon a certain lot; and the first ground urged for the restraint was that such an assessment was unconstitutional and void. The court, on page 565, says: "§ 11, art. 14, reads as follows: 'The legislature shall provide an uniform rule of taxation, except on property paying specific tax, and taxes shall be levied on such property

as shall be prescribed by law.' It is insisted that the assessment in question was not made under any uniform rule of taxation provided by the legislature, and that it was therefore void. It is not now necessary to determine what is the true import of the first clause of this section. No new rule of taxation had been provided by the legislature when the assessment was made, and it is not pretended that this provision of the constitution executes itself." And an assessment under the old law was held proper.

In People v. Bradley, 60 Ill. 390, this same principle was discussed. In that state a court had been established by statute, known as the "Recorder's Court of the City of Chicago," with its jurisdiction defined, judge, clerk, juries, and officers provided for. The constitution of 1870 continued this court as the "Criminal Court of Cook County," but with a change of judges, and enlarged geographical jurisdiction, but with a portion of the jurisdiction of the former court expressly denied, and none of the jurisdiction of that court expressly conferred. The case was *habeas corpus*, issued from the criminal court of Cook county. It was urged that this court was without authority to issue that writ; but the supreme court, after quoting the constitutional provision, say: "This provision, as clearly appears from the context, was intended to be self-executing, and operate upon the court in question immediately upon the constitution being adopted. * * * In short, all the machinery through which the functions of the criminal court are exercised is afforded by the statute creating the recorder's court, or else such functions must be considered as dormant until the means for their exercise shall be provided by legislation." In Nevada a law of 1861 provided for a homestead that should be exempt. A subsequent constitution declared "a homestead, as provided by law, shall be exempt from forced sale under any process of law," etc. There was also a clause similar to § 2 of schedule to our constitution. Property had been levied upon by a sheriff that was claimed as a homestead, and the position taken by the officer was that the constitutional provision repealed the former law, and, as no homestead had been provided by legislation subsequent to the adoption of the constitution, that therefore the

homestead right was gone. The court, in discussing the case, say: "If it requires future action of the legislature to provide what a homestead shall be, then this section of the constitution is inoperative to protect a homestead until such act is passed. It appears strange to us that it should be contended that this clause of the constitution is legislation so completely covering the whole ground of homestead exemption as to suspend all former laws on that subject, and at the same time that it is so incomplete as to be wholly inoperative." Goldman v. Clark, 1 Nev. 610.

We are, then, inevitably led to this position: Whether or not article 20 of our constitution repealed chapter 26 of the Laws of 1879 depends upon whether or not said article is self-executing, and this latter position, in turn, depends upon whether or not the legal machinery exists for its enforcement. On the argument both parties contended that the article was self-executing, but from widely different views as to the result. Relator claims it to be self-executing, and as a result the repeal of the entire license system, including penalties, follows. Respondent claims it was self-executing, but did not repeal the license law, except as to selling as a beverage, or, at most, repealed only the sections providing for license, and that the remaining provisions, being not inconsistent, stood, and that article 20 attached to it, for its own enforcement, the penalties of the old law, and in that form stood a complete penal law. Counsel for relator cites on this point Norton v. Taxing District, etc., 9 Sup. Ct. Rep. 322. The case went up from Tennessee. The constitution of 1834 of that state gave the legislature " power to authorize the several counties and incorporated towns in this state to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to state taxation." Article 2, § 29. Under that constitution the legislature authorized the city of Brownsville, by act of Feb. 8, 1870, by a majority vote, to issue bonds and subscribe to the stock of railroad corporations. At an election held for that purpose all the votes cast were in favor of the proposition. But before the bonds were issued, or the election held, the state

adopted an amendment to the constitution which added to the language before quoted the following: "But the credit of no county, city, or town shall be given or loaned to, or in aid of, any person, company, association, or corporation, except upon an election to be first held by the qualified voters of such county, city, or town, and the assent of three-fourths of the votes cast at said election." The constitution also contained the provision similar to § 2 of the schedule of our constitution. The supreme court of the United States, by Chief Justice Fuller, said: "It is clear that the inhibition imposed by § 29 of the constitution of 1870 operates directly upon municipalities themselves, and is absolute and self-executing; and, although power is reserved to the legislature to enable them to give or loan their credit, and to become stockholders, upon the assent of three-fourths of the votes cast at an election to be held by the qualified voters, the county, city, or town is destitute of the power to do so until legislation authorizing such election, and action thereupon is had." Then, after citing various authorities, he says: "These cases sufficiently illustrate the distinction between the operation of a constitutional limitation upon the power of the legislature and of a constitutional inhibition upon the municipality itself. In the former case past legislative action is not necessarily affected, while in the latter it is annulled.   *   *   *   *   *   The inhibition being self-executing, and operating directly upon the municipality, and not in itself enabling the latter to proceed in accordance with the prescribed limitation, further legislation is necessary before the municipality can act." In this case it is apparent that the Constitution of 1870 acted directly upon the municipalities themselves, and was self-executing, because there then existed, in full force, all the legal machinery necessary to compel obedience on the part of the city. Any tax-payer of the city could go into a court of equity and restrain the issuance of any bonds contrary to the provisions of the new constitution. Hence, being effective, the old law was repealed, not amended, and no bonds would issue under the old law; and the power of the city to issue bonds was in abeyance, and so far not self-executing, until the legislature should give the power in accordance

with the constitution of 1870. Relator also cites on this point State v. Tonks, (R. I.) 5 Atl. Rep. 636. The opinion is short and unsatisfactory. The court hold that the prohibition amendment in that state repealed the prior license law. We have no means at hand of knowing in what respects, if any, that amendment and the prior laws differ from article 20 of our constitution and our prior laws, but assume that they are practically identical. The question of the self-executing character of the amendment was not presented to or considered by the court. The thirteenth amendment to the federal constitution, prohibiting slavery and involuntary servitude, provided that congress should enact laws for its enforcement, but was nevertheless held self-executing, at least in part; and that must be true, because, immediately upon adoption of that amendment, any person held in violation of its terms had all the legal means of redress that he would have in case of any other unlawful restraint of his liberty. All the legal machinery was at hand. Mr. Cooley, speaking on this same point, well says: "And, while courts shall be in existence competent to issue the writ of *habeas corpus*, and to administer common-law remedies, it seems difficult to imagine a case of attempt at a violation or evasion of this declaration of universal liberty that shall be wanting in appropriate redress." Cooley, Const. Law, 221. But it was feared that in some portion of our land it might be necessary to reinforce the common-law remedies by penalties to be inflicted for any violation of the principles of that amendment, and congress was authorized to provide therefor, and no such penalties could be inflicted until congress took the contemplated action.

We recognize the well-settled principle that when, by constitutional provisions, any personal or private right is granted to the citizen, such right is placed beyond the reach of legislative interference, the bill of rights of all the state constitutions furnishing numerous examples of this class; and the reason is plain. The common-law is the ever ready and efficient means of enforcing private rights and redressing private wrongs. But we are considering in this case a constitutional provision that confers no affirmative rights, but, on the contrary, restricts the right of a citizen, and is strictly prohibitory in its nature;

and there is no action known to the law by which any private party could enforce its provisions. Those provisions can be enforced only by penalties for their violation,—penalties prescribed by the legislative power of the state. If such penalties do not exist, then article 20 is barren of the elements of a complete law, and, while prohibitory in form, is in fact simply a declaration of principles. In this connection we must briefly notice respondent's position. He is sustained by the Kansas Prohibition Cases, 24 Kan. 700. We will not stop to refine upon the differences between the Kansas prohibition clause and our own; but we hold that, if article 20 of our constitution be self-executing, then chapter 26, Laws 1879, falls in its entirety. This is in accord with the clear weight of authorities. See U. S. v. Tynen, *supra;* Fraser v. Alexander, *supra;* State v. Tonks, *supra;* and also, as very pertinent to this point, see comments of Justice Brewer in the Kansas Prohibition Cases, page 724. The whole scope and purpose of said chapter 26 was to provide a license law for selling intoxicants as a beverage. It is idle to say that such law would have been enacted to authorize such sales for medicinal, sacramental, and scientific purposes, and still more idle to say that the penalties would have been inflicted for such sales without license. Chapter 26 must all stand or all fall. It falls, if article 20 be self-executing. But to say that that article receives life through the penalties in said chapter 26, immediately destroys those penalties, and leaves the prohibition powerless of enforcement. Another and all-sufficient reason why we cannot attach such penalties to article 20 is that it was never so intended by the constitution makers. They expressly provided that future legislation should provide the regulations for the enforcement, and penalties for the violation, of said article. That intention must be respected. It follows that said article is not self-executing, no common-law or statutory provision existing for its enforcement, hence it remains dormant, as a restriction upon the citizens, until given life by subsequent legislation, and has no force as a repealing measure, and chapter 26 of the Laws of 1879 stands in its entirety.

We must not be understood to hold that article 20 does not

act at once upon the legislature. It does so act. The moral obligation in that direction is complete, and no other or greater can ever be imposed upon a legislative body. For non-action there would be no remedy; but if the legislature act at all it must act in the line directed by the constitution, or its action will be void. People v. McRoberts, 62 Ill. 38; People v. Rumsey, 64 Ill. 44.

Relator was properly held by the magistrate, and must be remanded to the custody of the respondent; and it is so ordered. All concur.

REPORTER: See also State v. Dorr, 19 Atl. Rep. 171; S. C. 82 Me. 212.