STATE of North Dakota ex rel. Jacque
STOCKMAN and Lloyd Omdahl,
Petitioners and Applicants,

v.

C. Morris ANDERSON et al., Respondents.

Civ. No. 8687.

Supreme Court of North Dakota.

Feb. 22, 1971.

John D. Kelly, Fargo, for petitioners and applicants.

Helgi Johanneson, Atty. Gen., and Paul M. Sand, First Asst. Atty. Gen., Bismarck, for respondents.

STRUTZ, Chief Justice.

This is an original proceeding in the Supreme Court in the nature of quo warranto, to determine the rights of the respondents, who are senators elected from multi-senatorial districts, to hold the office to which they have been elected. The petitioners point out that under Section 29 of the North Dakota Constitution each senatorial district shall be represented by one senator and no more, and that multi-senatorial districts, as they exist in the areas represented by the respondents, are unconstitutional.

Sections 26, 29, and 35 of the North Dakota Constitution were amended by the people of the State in June 1960. Section 26, as amended, merely provides that the North Dakota Senate shall be composed of forty-nine members. Section 29 provides:

"Each existing senatorial district as provided by law at the effective date of this amendment shall permanently constitute a senatorial district. Each senatorial district shall be represented by one senator and no more."

Section 35 provides:

"Each senatorial district shall be represented in the House of Representatives by at least one representative except that any senatorial district comprised of more than one county shall be represented in the House of Representatives by at least as many representatives as there are counties in such senatorial district. In addition the Legislative Assembly shall, at the first regular session after each federal decennial census, proceed to apportion the balance of the members of the House of Representatives to be elected from the several senatorial districts, within the limits prescribed by this Constitution, according to the population of the several senatorial districts. If any Legislative Assembly whose duty it is to make an apportionment shall fail to make the same as herein provided it shall be the duty of the chief justice of the supreme court, attorney general, secretary of state, and the

majority and minority leaders of the House of Representatives within ninety days after the adjournment of the legislature to make such apportionment and when so made a proclamation shall be issued by the chief justice announcing such apportionment which shall have the same force and effect as though made by the Legislative Assembly."

In 1962, after these amendments to Sections 26, 29, and 35 of the North Dakota Constitution had been adopted by the people of this State, the United States Supreme Court decided the case of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. In that case, the court held that a claim asserted under the Equal Protection Clause of the Federal Constitution, challenging the constitutionality of a State's apportionment of seats in its legislature, on the ground that the right to vote of certain citizens was effectively impaired since it was debased and diluted, presented a justiciable controversy subject to adjudication by the Federal courts. After that decision, an action was brought to reapportion the North Dakota Legislature. That proceeding was brought for the purpose of setting aside the then existing plan of apportionment of members of the North Dakota Legislative Assembly and for the purpose of having declared unconstitutional the provisions of the North Dakota Constitution upon which our system of apportionment was based, to wit, Sections 26, 29, and 35, and Section 54–03–01, North Dakota Century Code. The contention of the relators who brought that action was that the provisions of the Constitution referred to, and the above statute, were in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. A three-judge Federal court was convened to hear and determine the issues raised in that suit.

In its opinion in that case, the three-judge Federal court held that Sections 26, 29, and 35 of the North Dakota Constitution and Section 54–03–01, North Dakota Century Code, were unconstitutional and in violation of the Equal Protection Clause of the Four-

teenth Amendment to the Federal Constitution. Paulson v. Meier, 232 F.Supp. 183 (D.N.D.1964). The court, in that decision, went on to order the Thirty-ninth Legislative Assembly of the State of North Dakota to enact a new apportionment law "consistent with Federal constitutional standards," and then retained jurisdiction in the case so that it could be assured that its order would be followed.

In compliance with this order of the Federal court, the Thirty-ninth Legislative Assembly enacted House Bill 566, reapportioning the membership of the North Dakota Legislature. After the law had been passed, the defendants in that action moved the Federal court to dismiss the case. After due deliberation, the court handed down its second decision. Paulson v. Meier, 246 F.Supp. 36 (D.N.D.1965). In that decision, it found the reapportionment which the Legislature had made to be unconstitutional because it did not comply with the requirements of the Equal Protection Clause of the Federal Constitution. The court then proceeded to adopt a reapportionment plan of its own and declared that plan to be the legislative apportionment law of the State of North Dakota. Under the apportionment plan so adopted by the court, the districts represented by the respondents in this proceeding were made multi-senatorial districts, and these districts have been electing more than one senator at each election since the adoption of such reapportionment plan.

The petitioners now bring this action, in the nature of quo warranto, to determine the right of the respondents to hold the office of senator from such multi-senatorial districts. They assert that the respondents are acting as such senators contrary to the provision of the North Dakota Constitution which allows each senatorial district one senator and no more; that the order of the three-judge Federal court reapportioning the State Legislature was made without regard to the specific constitutional mandate of the North Dakota Constitution that

each senatorial district shall be represented by one senator and no more.

In their answer and return to the application of the petitioners, the respondents assert that the provisions of Section 29 of the North Dakota Constitution have been declared unconstitutional by the Federal court and that the provision of Section 29 stating that each senatorial district shall be represented by one senator and no more, no longer is in effect and therefore cannot be violated; that the issue raised by the petitioners is res judicata in that it was decided in the 1965 Federal court decision. The respondents further assert that the plan for reapportioning the State Legislature, as contained in the amendments to Sections 26, 29, and 35 of the North Dakota Constitution and adopted by the people in June of 1960, was adopted by the people as a "little Federal system" under which the representation in the Legislature was to be determined not only on the basis of population but also on the basis of area; that since the intent of the people to adopt a "little Federal system," in approving such plan for determining representation in the Legislature, cannot be given effect in the light of subsequent United States Supreme Court decisions holding that such representation must be on the basis of population alone, all of Section 29, as amended in 1960—including the provision that each senatorial district shall be represented by one senator and no more—must be held to be invalid.

To this argument, the petitioners respond that Section 29, providing for one senator and no more for each senatorial district, has been a part of the North Dakota Constitution since statehood and was not first adopted when the amendments of June 1960 were approved by the people.

█ We first will consider whether the judgment of the Federal court in 1965 declaring that, among other laws with which we are not concerned here, Sections 29 and 35 of the North Dakota Constitution, as amended in 1960, are unconstitutional, is res judicata and that the issues

may not again be raised by the petitioners in this proceeding. We think not. Generally, a valid and final judgment is binding on all parties of record in the action or proceeding in which the judgment is rendered. 50 C.J.S. Judgments § 767, p. 295. Neither of the petitioners was a party to the proceeding in Federal court, and judgment in that proceeding cannot be held to be res judicata as to them. Lende v. Wiedmeier, 179 N.W.2d 736 (N.D.1970).

█ It is obvious that the first portion of Section 29 of the 1960 amendment is invalid. It provides that each existing senatorial district as provided by law, at the effective date of that amendment, shall permanently constitute a senatorial district. Such provision failed entirely to make any allowance for future changes in the population of the various districts as they then existed. In Baker v. Carr, *supra*, the United States Supreme Court held that the Equal Protection Clause provides discoverable standards for use in determining the constitutionality of a State's legislative apportionment scheme. Thus any attempt to freeze the representation in a State legislature, regardless of future changes in population of the district, clearly would be invalid under this and subsequent decisions of the United States Supreme Court. See Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (M.D.Ala.1964).

The issue for us to determine in this case is whether the people of the State of North Dakota can be held to have intended to approve the second portion of Section 29 even though the first portion of that section is invalid.

█ The constitution of a State is subject to construction by the courts, whose duty it is to discover and to give effect to the intention of the people who adopted it. State ex rel. Rausch v. Amerada Petroleum Corp., 78 N.D. 247, 49 N.W.2d 14 (1951).

█ The fundamental purpose in construing a constitutional provision is to as-

certain and to give effect to the intention and purpose of the framers and of the people who adopt such constitutional provision. 16 C.J.S. Constitutional Law § 16, p. 72. The object of construction of the Constitution is to give effect to the intention of the people in adopting it. State ex rel. Linde v. Robinson, 35 N.D. 417, 160 N.W. 514 (1916).

This court has held that the construction which the Legislature itself has placed on a constitutional provision, followed by years of subsequent legislation, is entitled to great weight in the construction of a constitutional provision. State ex rel. McCue v. Blaisdell, 18 N.D. 31, 119 N.W. 360 (1909) ; State ex rel. Twichell v. Hall, 44 N.D. 459, 171 N.W. 213 (1919).

Thus the object sought in construing a constitutional provision is to try to determine and to give effect to the intention of the framers and of the people who adopted it, and all rules of construction are subservient to and intended to effectuate such object. Newman v. Hjelle, 133 N.W.2d 549 (N.D.1965).

In construing a constitutional provision, all facts which form the background for the adoption of that provision may be considered by the court. State v. Lohnes, 69 N.W.2d 508 (N.D.1955).

In the light of these rules, let us now examine the facts before us. It is true, as the petitioners urge, that the Constitution originally provided for one senator and no more from each district. The people, at the same time, in Section 214 of the Constitution, fixed the legislative apportionment. The representation from the various districts was fixed to vary from one senator and one representative, as in the case of the Twenty-eighth District, to one senator and four representatives, as in the case of the Eighth District. This apportionment, made in compliance with the constitutional provision, was changed by law from time to time. The last reapportionment before the adoption of the amendment to Section 29 in 1960 was as set forth in Section 54–03–01, North Dakota Century Code, in which the representations from the various districts ranged from one senator and one representative, as provided for the Second District, to one senator and five representatives, as provided for the Ninth District.

Thus, throughout the history of the State of North Dakota, up to and including the time of the adoption of the amendment of Section 29 and Section 35 in 1960, representation in the Legislature, and especially in the Senate, was based on more than just population. Each district had but one senator, it is true, regardless of whether its population was such that it was entitled to one or to five representatives.

The above was the history of representation in the Senate at the time the people adopted the amendments to Sections 29 and 35 in 1960. The United States Supreme Court had not yet spoken on the issue, and it was generally assumed throughout the United States that representation in the State legislatures was similar to representation of the States in the United States Congress. Thus it was felt that representation in the State Senate could, to some extent, at least, be on the basis of area, while representation in the House of Representatives was to be largely on the basis of population.

In the light of this history, can it be said that the people of North Dakota, in adopting the amendments to Section 29 and Section 35, could have foreseen the subsequent decisions of the United States Supreme Court requiring that representation in the Senate must be on a population basis? We think not. What was the intention of the people in adopting these amendments to the North Dakota Constitution in 1960? We cannot say that the people of our State would have desired the retention of the single-senatorial-district provision of Section 29 without the balance of that section, permanently establishing the boundaries of the districts. Accordingly, because we believe the people of our

State wanted the effect of the two provisions of Section 29, rather than one provision without the other, we hold that the section as a unit must fall because it is in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

The application of the petitioners for a writ of quo warranto determining that the respondent senators hold the office of North Dakota senator in violation of the Constitution of the State of North Dakota, and ousting each of the said senators from office, is in all things denied.

ERICKSTAD, PAULSON, TEIGEN and KNUDSON, JJ., concur.