STATE of North Dakota on the relation of Mart R. VOGEL, Timothy Q. Davies, P. W. Lanier, Charles A. Feste, Armond G. Erickson, Raymond A. Lamb, and Norman J. Backes, Petitioners,

v.

John O. GARAAS, Respondent.

Civ. No. 9435.

Supreme Court of North Dakota.

Jan. 23, 1978.

Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, for petitioners, argued by J. Gerald Nilles, Fargo.

Garaas Law Firm, Fargo, for respondent, argued by Jonathan T. Garaas.

Albert A. Wolf, Sp. Asst. Atty. Gen., appeared for the Governor, amicus curiae, with permission of the Supreme Court.

PAULSON, Judge.

This is a proceeding wherein certain private relators, on behalf of the State of North Dakota, seek to invoke the original jurisdiction of this Court for the purpose of issuing a writ of quo warranto to test the

validity of the Governor's appointment of John O. Garaas to a position as district court judge of the First Judicial District.

On November 30, 1977, the Honorable Roy K. Redetzke, a judge of the district court of the First Judicial District, submitted his resignation to the Honorable Arthur A. Link, Governor of the State of North Dakota, to be effective on January 2, 1978. On December 16, 1977, Governor Link appointed the respondent, John O. Garaas [hereinafter Garaas], to fill the vacancy in the office of district judge occurring as a result of Judge Redetzke's resignation.

The private relators, prior to commencing this action, requested the Honorable Allen I. Olson, Attorney General of the State of North Dakota, to initiate proceedings to challenge the Governor's appointment of Garaas. Attorney General Olson refused to initiate the requested proceedings, and thereafter the private relators initiated these proceedings in the name of the State of North Dakota.

On December 30, 1977, the private relators filed an information in the nature of quo warranto requesting this Court to determine by what authority, if any, Garaas has the right to occupy a position as district judge of the First Judicial District, and further requesting this Court to enjoin Garaas from exercising the duties, powers, and functions of a district court judge pending a final determination of these proceedings. On that same date, December 30, 1977, this Court issued an order to show cause ordering Garaas to appear before this Court and show cause, if any, why the private relators should not be granted leave to present the information before this Court and further ordering that Garaas be enjoined from exercising the duties, powers, and functions of a district court judge pending a final determination of these proceedings.

On January 4, 1978, Governor Link was granted permission to file a brief, amicus curiae, and to participate in oral arguments concerning these matters. Oral arguments were presented before this Court on January 6, 1978, and all parties have submitted written briefs. We turn first to the issue of whether this Court has jurisdiction to entertain the issues presented in this case.

## JURISDICTION

■ Article IV, § 86 of the North Dakota Constitution (as amended, Art. 97, S.L. 1975, ch. 615, and approved September 7, 1976, S.L. 1977, ch. 599), gives this Court appellate jurisdiction and also original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction. The power vested in this Court to issue original and remedial writs is a discretionary power which may not be invoked as a matter of right, and this Court will determine for itself in each case whether that particular case is within its jurisdiction. *State ex rel. Foughty v. Friederich,* 108 N.W.2d 681 (N.D.1961); *State ex rel. Lyons v. Guy,* 107 N.W.2d 211 (N.D.1961).

■ It is well settled that the power of this Court to issue writs in the exercise of its original jurisdiction extends only to those cases in which the question presented is *publici juris,* wherein the sovereignty of the State, the franchises or prerogatives of the State, or the liberties of its people are affected. *Gasser v. Dorgan,* 261 N.W.2d 386 (N.D. Dec. 20, 1977); *State v. Peterson,* 174 N.W.2d 95 (N.D.1970); *State ex rel. Lyons v. Guy, supra.* To warrant the exercise of this Court's original jurisdiction the interests of the State must be primary, not incidental, and the public, the community at large, must have an interest or right which may be affected. *Gasser v. Dorgan, supra; State v. Omdahl,* 138 N.W.2d 439 (N.D. 1965); *State v. North Dakota Hospital Service Ass'n,* 106 N.W.2d 545 (N.D.1960). Furthermore, this Court will not exercise its original jurisdiction to issue a writ of quo warranto, on the application of a private relator, unless the Attorney General has been requested to institute the proceedings and has refused to grant the request or has unreasonably delayed action thereon. *State ex rel. Lyons v. Guy, supra; State ex rel. Conrad v. Langer,* 68 N.D. 167, 277 N.W. 504 (1938).

■ The case of *State ex rel. Erickson v. Burr*, 16 N.D. 581, 113 N.W. 705 (1907), is direct precedent for the exercise of this Court's original jurisdiction in the instant case. In *Burr, supra*, the Governor appointed a district judge for the Ninth Judicial District. Subsequent to the appointment a private relator filed an information in the nature of quo warranto against the appointed district judge asserting that the appointment was invalid because state law required the position of district judge to be filled by an election by the people. In determining that the case was within this Court's original jurisdiction, we stated, in *Burr, supra* 113 N.W. at 707–708:

". . . the question involves the construction of a law to determine whether the Governor shall appoint, or the people elect, a judicial officer provided for by the State Constitution. It involves the question whether a law of a public nature and necessarily affecting the state at large is properly construed as contemplating immediate action by the Governor in making an appointment or a delay in filling the office until an election is held. If no immediate appointment is provided for, then the question is presented whether the defendant should be permitted to act under an illegal appointment under which the validity of his official acts is a matter of serious doubt. Irrespective of the matters of sole and personal interest to the relator, we have no hesitation in saying that a private relator's appeal for our assuming jurisdiction should be granted. The public is interested, and it is a matter of great public concern that the laws shall be interpreted by courts constituted as provided by the laws, and not otherwise."

The same issues of great public concern which existed in the *Burr* case are fully present in the instant case. The private relators, prior to instituting this case, properly requested the Attorney General to bring the action. He refused to do so. We conclude that this Court has jurisdiction to determine the issues of this case which have been properly brought before us, and we turn now to the disposition of those issues.

## REQUEST FOR WRIT OF QUO WARRANTO

The constitutional and statutory provisions which are relevant to the issues raised on this appeal provide as follows:

*Section 97, N.D.Const.* [Art. 97, S.L. 1975, ch. 615, § 1, approved September 7, 1976, S.L. 1977, ch. 599]. "A judicial nominating committee shall be established by law. Any vacancy in the office of supreme court justice or district court judge shall be filled by appointment by the governor from a list of candidates nominated by the committee, unless the governor calls a special election to fill the vacancy for the remainder of the term. An appointment shall continue until the next general election, when the office shall be filled by election for the remainder of the term."

*Section 78, N.D.Const.* "When any office shall from any cause become vacant, and no mode is provided by the constitution or law for filling such vacancy, the governor shall have power to fill such vacancy by appointment."

*§ 44–02–03, N.D.C.C.* "Any vacancy in a state or district office, except in the office of a member of the legislative assembly, shall be filled by appointment by the governor. If during a vacancy in the office of governor, the lieutenant governor and the secretary of state shall be impeached, displaced, resign, or die, or from mental or physical disease or otherwise become incapable of performing the duties of the office of governor as provided by sections 72 and 77 of the constitution of the state of North Dakota, then the succession to the office of governor shall be the speaker of the house, president pro tem of the senate, attorney general, in the order named. Each succeeding person named shall hold the office of governor until the vacancy is filled by election or until any disability of the preceding person in the line of succession is removed."

*§ 44–02–08, N.D.C.C.* "Any appointment to fill a vacancy under the provi-

sions of this chapter shall be made in writing, and, except as otherwise expressly provided by law, shall continue in force until the first general election thereafter, when the vacancy will be filled by election, and thereafter until the appointee's successor by election is qualified."

Prior to the adoption of Article IV, § 97 of the North Dakota Constitution [hereinafter § 97], on September 7, 1976, the Governor had the authority to fill, by appointment, a vacancy in the office of district court judge, pursuant to § 44–02–03, N.D. C.C. [previously § 696, C.L. 1913]. *State ex rel. Gunderson v. Byrne,* 59 N.D. 543, 231 N.W. 862 (1930).

By the adoption of § 97, the people very clearly expressed their intent with regard to filling vacancies in the office of district court judge. The people issued a mandate to the Legislature that "A judicial nominating committee shall be established by law." The people then gave the governor a choice of alternative methods for filling vacancies in the office of district court judge. The Governor could choose to appoint a judge to fill the vacancy from a list provided by the judicial nominating committee, or, in the alternative, the Governor could choose to call a special election by which the people would elect a judge to fill the vacancy.

The Legislature, during the 1977 Session, failed to establish the judicial nominating committee which they were obligated to establish pursuant to the expressed will of the people under § 97. Because there was no judicial nominating committee to submit a list of candidates to the Governor, he chose to fill the vacancy resulting from Judge Roy K. Redetzke's resignation with an appointee of his own choice. This court is asked to construe the relevant provisions of the law and determine whether the Governor acted within the confines of the law.

 The overriding objective which this Court must strive to accomplish when it attempts to construe a constitutional provision is to give effect to the intentions of the people who adopted it. *State ex rel. Lein v. Sathre,* 113 N.W.2d 679 (N.D.1962); *State ex rel. Lyons v. Guy,* 107 N.W.2d 211 (N.D. 1961).

 To properly construe § 97, we must first determine whether or not that constitutional amendment (as adopted on September 7, 1976) or any portion thereof, is currently operative. Pursuant to Article XV, § 202 of the North Dakota Constitution, a constitutional amendment becomes part of the Constitution upon the affirmative vote of a majority of the votes cast thereon by the electors of this State. However, it is well-settled law that a constitutional provision becomes immediately operative only if it is a self-executing provision, and that it does not become operative without appropriate legislation to implement its objectives if it is a non-self-executing provision. A constitutional provision is self-executing if it establishes a sufficient rule by which its purpose can be accomplished without the need of legislation to give it effect. *State ex rel. Ohlquist v. Swan,* 1 N.D. 5, 44 N.W. 492 (1890). However, a constitutional provision is non-self-executing wherein it merely establishes general objectives, without setting forth rules by which those objectives can be accomplished such that the provision must remain inoperative until appropriate legislation is enacted to give it effect. *Engstad v. Grand Forks County,* 10 N.D. 54, 84 N.W. 577 (1900); *Swan, supra.*

 Upon a careful examination of § 97, we conclude that the appointive process under that provision for filling a vacancy in the office of district court judge is non-self-executing. The provision is inoperative until a judicial nominating committee is established by law to supply a list of candidates from which the Governor can choose an appointee. Lest we be misunderstood, we want to make it perfectly clear that, although the appointive process under § 97 is inoperative, from its adoption, § 97 placed a continuing obligation on the Legislature to establish a judicial nominating committee. In the case of *State ex rel. Ohlquist v. Swan,* 1 N.D. 5, 44 N.W. 492 (1890), the North Dakota Supreme Court considered Article XX, § 217 of the North Dakota Constitution, which prohibited the

manufacture, import, and sale of intoxicating liquors. This constitutional provision further provided that "The legislative assembly shall by law prescribe regulations for the enforcement of the provisions of this article, and shall thereby provide suitable penalties for the violation thereof." The Supreme Court, upon holding that Article XX, § 217 of the North Dakota Constitution, was non-self-executing and that it remained dormant until the appropriate legislation was enacted, made the following statement in *Swan, supra* 44 N.W. at 496:

"We must not be understood to hold that article 20 [*sic*] does not act at once upon the legislature. It does so act. The moral obligation in that direction is complete, and no other or greater can ever be imposed upon a legislative body. For nonaction there would be no remedy; but if the legislature act at all it must act in the line directed by the constitution, or its action will be void." *State ex rel. Ohlquist v. Swan*, 1 N.D. 5, 44 N.W. 492 (1890).

The Legislature's failure to establish a judicial nominating committee is a continuing breach of the people's mandate to do so. The Legislature has a continuing duty to perform a constitutional mandate. *State ex rel. Lein v. Sathre*, 113 N.W.2d 679 (N.D. 1962).

We further conclude, upon examining § 97, that the provision of that section which authorizes the Governor to call a special election is non-self-executing in that it requires, as a prerequisite to its operation, legislation to provide the machinery for holding and conducting a special election. Title 16 of the North Dakota Century Code does provide the necessary machinery for holding and conducting elections (including special elections under Chapter 16–07, N.D.C.C.). Consequently, the special election provision of § 97 is currently operative, and the Governor has the authority to call a special election to fill a vacancy in the office of district court judge.

■ The ultimate question remains whether the Governor must fill a vacancy in the office of district court judge by calling a special election, in the absence of the establishment of a judicial nominating committee to render the § 97 appointive process operative.

Section 44–02–03, N.D.C.C., authorizes the Governor to fill a vacancy by appointment in any state or district office (except the office of a member of the legislative assembly), including a vacancy in the office of district court judge; and there is no requirement of a nominating committee to supply a list of candidates from which the Governor must choose his appointee. Unless § 44–02–03, N.D.C.C., was impliedly repealed by the adoption of § 97, the Governor continues to have authority under that statutory provision to fill vacancies in the office of district court judge without a judicial nominating committee.

■ It is a well-settled rule of law that a valid statute is not repealed by implication upon the adoption of a constitutional provision unless the statute is repugnant, inconsistent, or in conflict with the constitutional provision. *State ex rel. Agnew v. Schneider*, 253 N.W.2d 184 (N.D.1977). The people of this State clearly expressed their intent, by adoption of § 97, to allow the Governor a choice of methods to fill a vacancy in the office of district court judge. As we have already determined, the appointive process portion of § 97 is non-self-executing and remains inoperative until the Legislature establishes a judicial nominating committee. Thus, the people's true intent is thwarted with regard to the manner of filling vacancies in the office of district court judge, and cannot be fully realized until a nominating committee is established. Only the Legislature has the power, as well as the obligation to do that. In the interim, this Court is asked to construe the laws so as to maximize the intent of the people under the present circumstances. The difficulty in maximizing the people's intent is in determining exactly what method of filling vacancies in the office of district court judge the people would prefer in the absence of a judicial nominating committee. The people did not express an intent to allow the Governor to fill such vacancies by

appointment without the limitations imposed by requiring him to choose from a list of candidates supplied by a nominating committee. Nor, however, did the people express an intent to abrogate entirely the Governor's power to fill such vacancies by appointment. It is equally clear that the people did not intend that such vacancies must be filled by special election only.

■ It is appropriate for this Court, in construing a constitutional provision, to consider all facts which form the background for the adoption of such provision. *State ex rel. Stockman v. Anderson*, 184 N.W.2d 53 (N.D.1971). It is significant to note that, pursuant to § 78 of the North Dakota Constitution, which is still in effect as written and adopted as part of the 1889 Constitution, the Governor is authorized to fill vacancies by appointment, without the aid of a nominating committee, in positions for which no other mode of filling vacancies has been established, by Constitution or statute. It is also significant to note that under what is now § 44–02–03, N.D.C.C., the Governor has been authorized, since 1877, to fill vacancies in the office of district court judge by appointment without the aid of a nominating committee. Section 78 of the North Dakota Constitution and § 44–02–03, N.D.C.C., demonstrate an historical precedent as old as this State itself, for allowing the Governor of this State to fill vacancies by appointment.

A long history of vigorous debates, accompanied by the defeat of other proposed methods for the selection of district court judges and the filling of vacancies in the office thereof, preceded the final adoption of §§ 93 and 97 of Article IV of the North Dakota Constitution in 1976.[1] By the adoption of §§ 93 and 97 of the North Dakota Constitution, the people expressed their desire to continue to elect district court judges while, at the same time, they retained an appointive process to fill any

vacancies which might occur in the office of district court judge. A prevalent consideration, as indicated by the previously cited sources, for adopting an appointive process to fill vacancies in the office of district court judge was that such vacancies need to be filled quickly in order to allow the work of the courts to continue with as little interruption as possible. An appointive process serves the need for expeditiously filling such vacancies.

We conclude that it is the people's intent that § 44–02–03, N.D.C.C., with regard to filling vacancies in the office of district court judge, remain effective and in full force until the appointment process under § 97 becomes fully operative by establishment of a judicial nominating committee by the Legislature. Until the appointive process under § 97 becomes operative, the appointive process of § 44–02–03, N.D.C.C., is not repugnant, inconsistent, or in conflict with § 97 of the North Dakota Constitution. On the contrary, to allow the Governor the choice of filling a vacancy in the office of district court judge by calling a special election under § 97 of the North Dakota Constitution or by appointment under § 44–02–03, N.D.C.C., will result in effectuating the people's intent to the maximum degree possible under the circumstances.

Pursuant to § 44–02–08, N.D.C.C. (as amended, S.L. 1975, ch. 416, § 1), an appointment to fill a vacancy under § 44–02–03, N.D.C.C., is to continue in force until the first general election thereafter "except as otherwise expressly provided by law". Likewise, § 97 of the North Dakota Constitution provides that an appointment to fill a vacancy shall only continue until the next general election. This part of § 97 is self-executing and currently operative. Any other conclusion would thwart the intent of the people to limit the term of the appointment. Consequently, any appointment by

---

1. See the following sources for a history of the debate and the considerations involved in choosing a judicial selection system in this State: Vol. I, Debates of the North Dakota Constitutional Convention of 1972, pp. 534, 621–660 (1972); Kuhns, Revising a State Judi-cial Article: Issues for the North Dakota Constitutional Convention, 48 N.D.L.Rev. 217, 238–240 (1972); Note, Judicial Selection in North Dakota—Is Constitutional Revision Necessary?, 48 N.D.L.Rev. 327 (1972).

the Governor to fill a vacancy in the office of district court judge, whether pursuant to his authority under § 97 of the Constitution or under § 44–02–03, N.D.C.C., shall continue until a successor is elected at the next general election after such appointment is made and thereafter qualifies. See § 44–01–03, N.D.C.C.[2]

Accordingly, we hold that the Governor currently has authority to fill vacancies by appointment in the office of district court judge under § 44–02–03, N.D.C.C. An appointment made thereunder will continue in force only until a successor is elected at the next general election after such appointment is made and thereafter qualifies. If, however, the vacancy is filled by a special election called by the Governor under § 97 of the North Dakota Constitution, the winning candidate will continue to fill the vacancy for the remainder of the term. Upon the establishment of a judicial nominating committee by the Legislature, the appointive process under § 97 of the Constitution will become operative, and § 44–02–03, N.D.C.C., will thereby be repealed by implication with regard to the filling of vacancies in the office of district court judge. The Governor's authority to fill such vacancies will then rest exclusively under § 97 of the North Dakota Constitution wherein the Governor will have the choice of calling a special election to fill the vacancy for the remainder of the term or of filling the vacancy by appointment, from a list of candidates supplied by the judicial nominating committee, until the next general election after such appointment is made.

In accordance with this opinion, the request for a writ of quo warranto, determining that the Governor's appointment of John O. Garaas to the position of district court judge was invalid and the result of an unauthorized act by the Governor, is hereby denied and the temporary restraining order is dissolved.

ERICKSTAD, C. J., DOUGLAS B. HEEN,* D. J., and PAULSON, SAND and PEDERSON, JJ., concur.

SAND, Justice (also specially concurring).

My statement in the first column, page 188, in *State ex rel. Agnew v. Schneider*, 253 N.W.2d 184 (N.D.1977), was too broadly stated. A better statement would have been that the new Judicial Article generally is not self-executing.

---

**2.** The term "general election" contemplates following the regular election procedures, including the nominating procedures of the primary election unless time does not permit, in which case nominations would be accomplished in the same manner as in special elections for no-party offices.

* The Honorable Robert Vogel deeming himself disqualified did not participate; the Honorable Douglas B. Heen, Judge of the Second Judicial District sitting in his place.