M. C. BRADY, Dist. Att'y, ex rel. etc. v. O. F. WEST.

1. ELECTION — NEW COUNTIES. — Art. IV., sec. 37 of Const., and art. V., sec. 13. Under those sections of the constitution empowering the legislature to create new counties, and declaring that all vacancies (in offices) not provided in the constitution, shall be filled in such manner as the legislature may prescribe. The act of the legislature conferring power upon the governor to appoint a chancery clerk for the newly created county, to continue in office until the next general election, is constitutional and valid.

2. SAME. — Art. IV., sec. 38 of Const. — The appointment of W. by the governor would have been legal, and would have conferred the office upon him, except that W. was a member of the legislature when the bill passed creating the new county. Being such member, he was incompetent under sec. 38, art. IV. of constitution to take and hold the office.

3. The act of the legislature under which McC. was elected, has been by this court declared unconstitutional and void. He therefore by his election acquired no right to the office.

4. FEE AND SALARY BILL — VOID. — The act of the legislature, commonly called the "fee and salary bill," has not the effect of law. Because the bill approved by the governor, as shown by the journals of the two houses of the legislature, is not the bill that passed those bodies. The bill bears upon its face evidence of erasure and interlineations, and the use of figures, without any indication of their value, which makes it unintelligible in many important particulars.

Quære. — If McCracken was without valid claim, could he call in question the right of West? If not, ought this court to pass upon it? Per TARBELL, J.

ERROR to the Circuit Court of Tate County. Hon. E. S. FISHER, Judge.

The opinion of the court contains a sufficient statement of the case.

White & Chalmers, for plaintiff in error:

Under section 19 of article VI., of the constitution, which provides that "the clerk of the chancery court shall be elected by the qualified voters of their several counties," the authority given by the legislature to the governor to make the appointment to the

office is unconstitutional and void.    It is attempted to show authority in the legislature to confer upon the governor the power of appointment in the following clause of the constitution:  "In all cases not otherwise provided for in this constitution, the legislature may determine the mode of filling all vacancies in all offices." Art. XII., sec 7.    But this clause does not confer the power.

The office of chancery clerk of Tate county had no existence until the creation of that county, and then it became the right of the people to fill it by election.    The office was not " vacant " in the legal significance of the term.    Searg. Const. Law, 373, 374. The power to fill a vacancy does not give the right to fill a newly created office.    People ex rel. Ewing v. Forquer, Breese (1 Ills.), 68 ; 6 Eng. (Ark.), 152 ; 2 N. H., 202.    If there was a vacancy in the office of chancery clerk, it was " a vacancy in a county office," which shall be filled by an election to be ordered by the board of supervisors. Const., art. VI., sec. 20 ; ib., art. VI., sec. 19.

2.  But if the law authorizing the governor to appoint be held valid, defendant's appointment to the office was void, because he was a member of the legislature by which the county of Tate was created, and by which was also created the office of chancery clerk in that county.    "No senator or representative during the term for which he was elected shall be appointed to any office of profit under this state, which shall have been created or the emoluments of which have been increased during the time such senator or representative was in office, except to such offices as may be filled by an election of the people."    Const., art. IV., sec. 38 ; Shelby v. Alcorn, 36 Miss., 273.

3.  But if it should be held that the appointment of the defendant is valid, then we insist it is void as obnoxious to section 38 of article four, which declares " that no legislator shall be appointed to any office, the emoluments of which have been increased during the term such senator or representative was in office," etc.    It is admitted that the defendant was a member of the legislature that created Tate county, and that the emoluments of

chancery clerks were increased by the same legislature. It makes no difference that he resigned before the bill was signed by the governor. He was a member at the time the law increasing the emoluments of the office passed both houses.

4. But it said that the law fixing the fees and emoluments of chancery clerks was never a law, and that therefore the fees and emoluments were never increased, because the enrolled bill had been altered and mutilated. The fact that the enrolled bill contained a pencil memorandum that the committee on enrolled bills had stated that it had been altered, and requested permission to correct it, is no proof that the bill had been mutilated. It is the law of the land, as it appears in the records of the office of the secretary of state, and no one can gainsay it. Enrolled bills import absolute verity, and cannot be questioned even by reference to the journals of the legislature, much less by parol proof. Green v. Weller, 32 Miss., 650.

*Harris & George*, for defendant in error.

1. That when a new county is created, and by the act creating it, it is to be organized before the next succeeding general election, the county officers necessary and required under the constitution are then called into being, and until they are filled, the offices, in the sense of the constitution, are vacant. See art. V., sec. 13 ; art. VI., sec. 20.

2. That when a county office is vacant, and it is to be filled by an election, such election can be ordered only by the board of supervisors of the county.

3. That the constitutional power — not to say duty (art. iv., sec. 37) — of the legislature "to provide for the organization of new counties," includes within it the further power to do all that is necessary and proper to complete the organization, and as there can be no complete organization of a county without a provision for the necessary constitutional offices, the legislature may provide for filling such offices as they deem fit, not contrary to the constitution. It was the manifest intention of the framers of the

constitution that all vacancies should be filled, with two excep-
tions, in the manner to be designated by the legislature. The
constitution no where intimates that such vacancies shall be filled
by an election.

Upon the creation of Tate county, every office, brought by the
act into existence, was *vacant* in the broadest sense of the term.
How was the vacancy to be filled except as the constitution directs,
in such manner as the legislature might prescribe. The legisla-
ture directed that the vacancies should be filled by appointment
by the governor. Then if West's appointment was void for other
reasons, still the vacancy could only be filled in the mode which
the legislature had prescribed, *i. e.*, by appointment by the governor
or on a certain contingency by the chancellor.

Then, whatever may be the defendant's rights, it is clear that
the relator has no right to question it. But the relator's right is
also gone upon another ground. Supposing the appointment of
West was void and the office was vacant, and that the election of
relator was valid, his term of office began immediately on his
election, and he wholly failed to qualify within thirty days there-
after.

2. The act creating Tate county did not *ipse facto* create the office
of chancery clerk. The constitution fixes the different offices for a
county the moment it is created, and the office owes its existence
to the constitution and not to the act creating the county.

As to the ground, ineligibility, arising from the increase of the
emoluments of the office, it is sufficient to say that the fee and
salary bill, conceding for the present that it ripened into a valid
law, did not do so until the 23d of October, 1873, when the gov-
ernor approved it. The fees and emoluments of the office were
not increased until that date, when the defendant was not a mem-
ber of the legislature, for he resigned in the preceding April.

3. The unconstitutional act, relative to the election of chancery
clerk, is absolutely void, and cannot be valid in its application to
the present case. The court cannot make a new statute out of

the constitutional parts. The whole statute must be void unless the constitutional parts can have effect in the sense the legislature intended and independent of the unconstitutional part. If the statute has two distinct objects independent of each other, and be void as to one, the other may have effect because of the legislative intent as to what may may be carried out; but if it have but one object, and some of its provisions are void, then the whole is void, and this for no other reason than that the object could not be obtained in the sense intended by the legislature. Cooley Const. Limit, 178 et seq.

The whole object and intent of the statute was to change the general election for clerks and district attorneys from 1871, and quadrennially thereafter to 1873, and quadriennially thereafter. Its whole basis and scheme is unconstitutional and has been so decided. See Thompson v. Grand Gulf Bank, 3 How., 240.

*W. L. Nugent,* on the same side:

The court may inspect the original bills in the office of the secretary of state, and have recourse to the legislative journals to ascertain the validity of what are published as laws of the state. Supervisors v. Heeran, 2 Minn., 330 ; Jones v. Hutchinson, 43 Ala., 721 ; Spangler v. Jacoby, 14 Ills., 297 ; Fowler v. Pierce, 2 Cal., 165 ; 17 Ills., 151 ; 19 ib., 324. A bill does not become a law until it has gone through all the forms made necessary by the constitution to give it force and validity. Wartman v. Philadelphia, 33 Penn. St., 202 ; Jones v. Hutchinson, *supra.* An act approved by the governor under a mistake, and subsequently returned to the legislature with his signature erased and his objections stated, was not a law, the bill never having gone absolutely out of his possession, and the legislature having been promptly notified of the facts. People v. Hatch, 19 Ills., 283 ; Birdsall v. Carrick, 3 Nev., 154. The signatures of the speaker of the house of representatives and president of the senate are presumptive evidence only of the passage of an act (Turley v. County of Logan, 17 Ills., 151), and evidence *aliunde* may be

received to contradict the presumption. Fowler v. Pierce, *supra ;* Green v. Weller, 32 Miss., 650. HARDY, J. It is essential to the validity of a law that it be laid before the governor personally after it has been passed in a legal and constitutional form, the governor being part of the law making power by the express terms of the constitution. 99 Mass., 636.

But there is another potent objection against the law. The legislature adjourned before any action was taken by the governor; and he did not approve the bill until three days after the assembling of the next session of the legislature in October, 1873. By the very terms of the constitution he could not approve the bill at all. If it is a law at all, it has become so by force of the constitution itself, and not by anything which the governor has done or failed to do. It can only be a law by virtue of its passage by the legislature, and the proof shows it is not the bill which was enacted.

There is another view equally potent. The legislature requested the return of the bill, though the enrolling committee and the governor assented. In contemplation of law, therefore, the bill has never passed out of the possession of the legislature, and the governor was powerless to approve it. The process of correction was simple — to return the erroneously enrolled bill to the legislature for appropriate action.

PEYTON, C. J., delivered the opinion of the court.

This is a writ of error from a judgment dismissing an information in the nature of a *quo warranto* filed by the district attorney on the relation of J. P. McCracken against Osborne F. West.

By an act of the legislature of this state, approved April 15, 1873, a new county called the county of Tate was created, and under the authority of an act amendatory of that act, approved April 19, 1873, the defendant in error was appointed by the governor chancery clerk of said county, to hold, possess and enjoy

said office of chancery clerk until the first Monday in January, 1876, and by virtue of said appointment, he duly qualified and entered upon the discharge of the duties of the office.

The relator, J. P. McCracken, claims to be entitled to the office of clerk of the chancery court of said county of Tate by virtue of his election to that office by the qualified voters of said county, at an election held on the first Tuesday after the first Monday in November, 1873, under on act to provide for the election of district attorneys and clerks of the circuit and chancery courts of this state, approved April 21, 1873.

The questions presented by this case for our determination are of no ordinary character, and have received in their solution that mature and deliberate consideration to which their gravity and importance entitle them.

It is urged on behalf of the relator, that the appointment of the defendant to the office of clerk of the chancery court of Tate county is void, for the following reasons: 1. Because the act under which he was appointed was unconstitutional and void.   2. Because he was a member of the legislature at the time of the creation of the office of clerk of the chancery court of said county of Tate.   3. Because the emoluments of that office were increased during the time he was a member of the legislature.

In support of the first objection to the appointment of the defendant to the office of clerk of the chancery court of Tate county by the governor, it is contended that no vacancy in any county office, after the first general election under the present constitution, can be filled except by an election by the qualified electors of the county, ordered by the board of supervisors of the county, as provided in section 20 of article 6 of the constitution, and that the act of the legislature conferring the power on the governor to make the appointment of chancery clerk of said county was unauthorized by the constitution, and is therefore null and void. This provision of the constitution has reference to filling vacancies that have occurred by death, resignation or removal after all the

offices in the county have once been filled by an election. This is true with reference to a county that has once been fully organized. But it does not apply to the organization of a new county, which presents a special case, arising under the power conferred upon the legislature by section 37 of article 4 of the constitution, to organize new counties. This power to organize a new county and put the machinery of the local government in operation might, upon a fair and reasonable construction, be regarded as sufficient to uphold the act conferring the power on the governor to make the appointment. Even if this provision should not confer the power, there can be no doubt that section 13 of article 5 of the constitution does give the legislature authority to pass the act under consideration. This section provides that all vacancies not provided for in this constitution, shall be filled in such manner as the legislature may prescribe. Under these two sections of the constitution, there can be no reasonable doubt as to the power of the legislature to confer upon the governor the authority to appoint a chancery clerk for the newly created county, to continue in the office until the first Monday in January, 1876, when the office will be filled by an election in November, 1875, and quadrennially thereafter. But it is insisted that the act authorizing the appointment was repealed by an act entitled " an act to provide for the election of district attorneys and clerks of the circuit and chancery courts in this state," approved April 21, 1873. With regard to this act, it is sufficient to say that it has recently been declared by this court, to be unconstitutional and void, in the case of Wolfe v. Peyton.

It is admitted by both parties that the defendant was a member of the legislature at the time of the passage of the act, creating the county of Tate, and also at the date of the passage of the supplementary act, under which he was appointed clerk of the chancery court of said county, and that he resigned his office of representative on the 19th day of April, 1873, and was appointed by the governor clerk of the chancery court of said county on

the 21st day of April, 1873, and that the relator was elected to that office on the first Tuesday after the first Monday in November, 1873.

This admission brings us to the consideration of the second ground of objection to the validity of the defendant's appointment, which involves a solution of the question, whether the act forming the county of Tate created the office of the clerk of the chancery court of that county.

It is insisted on the part of the defendant that said act did not create the office, but that it was created by the constitution of the state. Upon reference to the constitution, we find the 19th section of article 6 provides that the clerk of the supreme court shall be appointed by said court for the term of four years, and the clerk of the circuit court and the clerk of the chancery court shall be elected by the qualified voters of their several counties, and shall hold their office for the term of four years. This does not create the office, but pre-supposes the office to exist, and prescribes the manner in which it is to be filled in counties fully organized. The office of clerk of the chancery court is a county office, and, in the nature of things, it cannot exist until the county exists. It springs into existence upon the creation of the county and the extension of the chancery system to it. It cannot be said, with any propriety of language, that the *office of clerk of the chancery court of Tate county* existed before that county was created, and before it had a chancery court, and the act which created the county gave it a chancery court.

If this be a correct view of the law, it follows that the defendant, under the 38th section of the 4th article of the constitution, was, at the time of his appointment, incapacitated to hold the office of clerk of the chancery court of Tate county by *appointment by the governor*, but is now eligible to said office either by an *election of the people*, or by appointment by the governor. This is a wise provision of the constitution, designed as far as possible to preserve the purity of legislation, by putting the sting of disabil-

ity into the temptation of members of the legislature to create offices of profit with the view of taking and holding them themselves.

This brings us to the consideration of the question, whether the emoluments of the office of clerk of the chancery court of Tate county were increased during the time the defendant was a member of the legislature, and the solution of this question necessarily involves an inquiry into the validity of an act of the legislature of this state, entitled "an act to regulate the fees and salaries of public officers," approved, October 22, 1873.

It is very evident from an inspection of the enrolled bill, as signed by the governor and deposited in the office of secretary of state, that it was not the bill passed by the legislature. This is apparent from the erasures, interlineations and omissions contained in said enrolled bill. Additional evidence is derived from the journals of two houses of the legislature, which clearly show that it was not the bill passed by the legislature. The senate journals show that amendments were made to the bill on its final reading, which are not contained in the enrolled bill, which was sent to the governor for his action thereon.

A special committee, appointed by the senate, to inquire into the mutilation (as they call it) of the fee and salary bill, reported that a bill of that title was passed by the legislature at the regular term held in January, 1873, and passed into the hands of the enrolling clerk, but was never correctly enrolled. And after it was incorrectly enrolled it was handed to the committee of the senate on enrolled bills, and was, by the committee, who acted under the belief that the bill had been correctly enrolled and under a mistake of fact, handed to the governor for his approval. Immediately after such presentation for approval, and on the last day of the session, the committee on enrolled bills discovered the gross mistakes and inaccuracies in the bill as enrolled, and immediately notified the governor that the bill so handed to him was not the bill in fact passed by the legislature, and asked and obtained leave

to examine it and correct the many errors contained in it. If it was made to appear that it was incorrectly enrolled, the committee had a right to recall it at any time before it was acted on by the governor, and correct it, and, under such circumstances it is believed, the signature of the governor would not make it a law. The enrolled bill and the act, as published, bear internal evidence that it never could have been passed by the legislature. That portion of the act purporting to prescribe the fees of certain officers is unintelligible, as using figures without anything to indicate what value they represent.

When the governor was informed by the committee of the many errors in the enrolled bill, and had granted their request to examine and correct those errors, so as to make the enrolled bill conform to the bill as it was passed by the legislature, the enrolled bill was, in legal effect, withdrawn from the governor, and became under the control of the senate for the purposes indicated, which could not be effectuated on account of the immediate adjournment of the legislature. The right of the governor, under this state of facts, to sign the bill, is more than doubtful.

The doctrine that the enrolled acts of the legislature, when signed by the speaker of the house of representatives and president of the senate, and approved by the governor, and deposited in the office of the secretary of state, are records, and import absolute and uncontrollable verity, and that they are conclusive evidence of the due enactment of the statutes contained in them, and cannot be impeached in any manner, as enunciated by a majority of the court in Green v. Weller, 32 Miss., 650, must be received with some qualification. We think these acts are *prima facie* evidence of the existence of the statutes, and that they were regularly and constitutionally passed by the legislature, but they are not conclusive.

Mr. Justice Cooley in his valuable work on Constitutional Limitations says: "Each house keeps a journal of its proceedings, which is a public record, and of which the courts are at liberty to

take judicial notice. If it should appear from these journals that any act did not receive the requisite majority, or that in respect to it the legislature did not follow any requirements of the constitution, or that in any other respect the act was not constitutionally adopted. The courts may act upon this evidence, and adjudge the statute void." Cooley on Constitutional Limitations, 135.

The constitution requires each house to keep a journal, and declares that certain facts, made essential to the passage of the legislative act, shall be stated therein. If those facts do not appear on the journal, the conclusion is that they did not transpire. The journal of each house is made up under the immediate direction and inspection of the house, and is presumed to contain a full and complete history of its proceedings, and is the proper evidence of the action of that branch, upon all matters before it. 1 Greenl. Ev., section 491, page 538. It is clearly competent to show from the journals of either branch of the legislature, that a particular act was not passed in the mode prescribed by constitution, and thus defeat its operation altogether. If a certain act received the constitutional assent of the body, it will appear on the face of the journal. And when a contest arises as to whether the act was thus passed, the journal may be appealed to to settle it. It is the evidence of the action of the house, and by it, the act must stand or fall. It certainly was not the intention of the framers of the constitution that the signatures of the presiding officers of the two houses, and of the executive, should furnish conclusive evidence of the passage of an act. The presumption indeed is that an act thus verified, became a law pursuant to the requirements of the constitution, but that presumption may be overthrown. If the journal is lost or destroyed, this presumption will sustain the act, for it will be contended that the proper entry was made in the journal. Spangler v. Jacoby, 14 Ill., 299 ; Prescott v. Board of Trustees of Illinois and Michigan Canal, 19 Ill., 327 ; and Fowler v. Pierce, 2 Cal , 165.

An act of the legislature is passed and becomes a law, only

when it has gone through all the forms made necessary by the constitution to give force and validity to it as a binding rule of conduct for the citizen.    Jones v. Hutchinson, 43 Ala., 721.

The wise rules adopted as safeguards against error in the business of legislation are ordinarily sufficient to secure the object; but notwithstanding the utmost vigilance, error will sometimes intervene.    In making the copy of an engrossed bill for enrollment, a separate and distinct matter from that contained in the original bill might be inserted and escape detection before the adjournment of the legislature.    In such case great injury might result to the public, and the rights of the citizen, if resort for the detection of the error, could not be had to the legislative journals.    Why should not the citizen, whose life, liberty or property is made forfeit by the operation of a particular act, be allowed to show to the court that the same was passed in violation of his constitutional rights, or that it has been placed among the archives of government by fraud or mistake, and never had a legal existence?    Is there no way of ascertaining whether the bill deposited in the office of the secretary of state is the bill actually passed by the legislature?    We think this may be done by the evidence furnished by the journals of the two houses of the legislature.    The errors must appear upon the face of the enrolled bill, or from the journals of the legislature, to justify the court in pronouncing the act void.    Whenever the legislature is acting in the apparent performance of legal functions, every reasonable presumption is to be made in favor of the action of that body ; it will not be presumed in any case, from the mere silence of the journals, that either house has exceeded its authority, or disregarded a constitutional requirement in the passage of legislative acts, unless where the constitution has expressly required the journals to show the action taken, as, for instance, where it requires the yeas and nays to be entered. Cooley on Constitutional Limitations, 135.

We have arrived at the conclusion that the act under which the defendant, West, was appointed clerk of the chancery court of

Tate county, is valid, and that West, being a member of the legislature at the time that that office was created, was thereby rendered incapable of holding said office by the appointment by governor; that the election of the relator, McCracken, in November last, to the office of clerk of the chancery court of said county of Tate, was illegal and void, and that said office now remains to be filled by executive appointment. And that the act entitled "an act to regulate the fees and salaries of public officers" is void.

The judgment dismissing the information in the nature of a *quo warranto* is affirmed.

Per Tarbell, J. Since the judgment of this court in the above cause, I have reviewed the record therein. Without intending to dissent, I am nevertheless impressed with the conviction that when we had passed upon the claim of McCracken to the office in controversy, the case was closed. If he was without right, could he call in question the right of West? If not, ought this court to pass upon it? Concurring in the conclusion that the claim of McCracken was without merit, my opinion is reserved upon the other points discussed and decided.