Points Decided.

(June 6, 1912.)

STATE, Appellant, v. FRED W. GOODING, Respondent.

[124 Pac. 791.]

OFFICE—CREATION OF — DISQUALIFICATION TO HOLD — REMOVAL FROM—
ACTION QUASI CRIMINAL—CONSTRUCTION OF STATUTE.

(Syllabus by the court.)

1. Under the provisions of sec. 251, Rev. Codes, it is made unlawful for any member of the legislature to accept or receive, or for the governor or other official or board to appoint, such member to any office of trust, profit, honor or emolument created by any laws passed by the legislature of which he is a member.

2. It is also provided in said section that any appointment made in violation of the provisions of said section shall be null and void, and on the part of the person so appointed it is made a misdemeanor for him to attempt to exercise the powers of such office, and such attempt is declared a usurpation in office, and the appointee is deemed to be guilty of a misdemeanor and subject to a fine of not less than $500 nor more than $5,000.

3. The statutory proceedings for the removal from office (sec. 4612, Rev. Codes) is in the nature of *quo warranto* and *quasi* criminal.

4. Said proceedings being *quasi* criminal in character, the disqualifications mentioned in said sec. 251 will not be extended to persons who do not come clearly within their scope.

5. The reason for excluding a person from an office who has been concerned in creating it is to take away, as far as possible, any improper bias in the vote of the legislature and to secure to constituents a pledge of his disinterestedness in such office.

6. To create an office means to cause it to exist, and the act which provides for the organization and government of highway districts, etc. (approved March 8, 1911, Sess. Laws, p. 121), does not create the office of commissioner of highway districts, but makes it possible for the people to organize highway districts and thereby bring into existence the office of highway commissioner.

7. Said act requires many things to be done by the electors and land owners of certain territory before said office can exist therein.

APPEAL from the District Court of the Fourth Judicial District for Lincoln County. Hon. Edward A. Walters, Judge.

A proceeding brought in the name of the state to remove the defendant from the office of highway commissioner of Shoshone Highway District No. 2. The trial court sustained a general demurrer to the complaint. *Affirmed.*

D. C. McDougall, Attorney General, J. H. Peterson, and O. M. Van Duyn, for the State.

The function of creating an office is one purely for the legislature, and cannot be delegated, and any act of the legislature which would seek to delegate to any board or person the power to create an office would be unconstitutional.

An office in legal contemplation is an entity, and may exist in fact although it be without an incumbent. (*People v. Stratton,* 28 Cal. 382; *State v. Rose,* 74 Kan. 262, 10 Ann. Cas. 927, 86 Pac. 296, 6 L. R. A., N. S., 843; *Heard v. Elliott,* 116 Tenn. 150, 92 S. W. 764.)

Johnson & Haddock, for Respondent.

It has been held by this court that a proceeding in *quo warranto* is a *quasi*-criminal proceeding. (*People v. Green,* 1 Ida. 235.)

"The disqualifications provided by the legislature are strictly construed, and will not be extended to cases not clearly within their scope." (29 Cyc. 1380, 1381.)

Many states have provisions similar to our sec. 251, but so far as we have noted, these provisions are always found in their constitutions—not in their statutes. The parent of all these statutory disqualifications is sec. 1, art. 6, clause 2, of the federal constitution. (Story, Const. U. S., sec. 867; Thorpe, History of Constitution, 508, 509.)

The highway district law does not create nor purport to create any highway districts. The word "create" has a well-defined meaning. (*Roth v. State,* 158 Ind. 242, 63 N. E. 460.)

· There can be no such office as highway commissioner until there is a highway district. If the people create the highway district, they thereby bring the office into existence, they

create the office. Then, and not till then, does the governor have the power of appointment.

The creation of a municipality *ipso facto* creates the offices of such municipality. (*Brady v. West,* 50 Miss. 68; *State ex rel. Atty. Gen. v. Porter,* 1 Ala. 688.)

SULLIVAN, J.—This action was brought by the prosecuting attorney of Lincoln county under the provisions of sec. 4612, Rev. Codes, in the name of the state, for the purpose of determining the right of defendant to hold the office of highway commissioner of Shoshone Highway District No. 2, and for the purpose of ousting the defendant from that office and recovering the fine fixed by the provisions of sec. 251, Rev. Codes, for the usurpation of the powers of an office.

It is alleged in the complaint that the law known as the highway district law, approved March 8, 1911 (Sess. Laws, p. 121), provides for the formation of highway districts, and that under the provisions of said law said Shoshone Highway District No. 2 was established; that said act provides for three highway commissioners, when so organized, and that the first highway commissioners of such highway districts shall be appointed by the governor; that the defendant was a member of the legislature, to wit, a senator, at the date of the passage of said highway district law and that he still is such senator; that on the 27th of July, 1911, the governor of the state of Idaho, without authority of law, appointed the defendant to the office of highway commissioner of said highway district; that said defendant by reason of his election, qualification and service as a member of the legislature in the state of Idaho, which passed said law creating the office of highway commissioners, is ineligible and disqualified to hold the office of highway commissioner; that regardless of that fact said defendant, without lawful authority, accepted said appointment to said office and unlawfully obtruded himself into said office as highway commissioner of said district; that on or about the 28th of December, 1911, the citizens and taxpayers of said district complained and gave notice of the usurpation of said office to the prosecuting attorney of said Lincoln

county. Thereupon the prosecuting attorney in the name of the people brought this action for the purposes above stated.

To said complaint the defendant filed a demurrer, setting forth four grounds of demurrer. The demurrer was overruled as to all of the grounds except the third, which was to the effect that the complaint did not state facts sufficient to constitute a cause of action. The plaintiff refused to plead further, and a judgment of dismissal was entered, and this appeal is from the judgment.

The principal question presented for decision here is: Did the legislature create the office of highway commissioner of Shoshone Highway District No. 2 under said act? If the legislature created the office of highway commissioner of said district, and that is an office of trust, profit, honor or emolument, then the action of the trial court in sustaining said demurrer was error, for under the provisions of sec. 251, Rev. Codes, an office created by any law passed by the legislature cannot be legally filled, either by appointment or election or at all, by a person who was a member of the legislature that created such office, during the term for which he was elected as a member of the legislature. Said section is as follows:

"It shall be unlawful for any member of the legislature, during the term for which he was elected, to accept or receive, or for the governor, or other official or board, to appoint such member of the legislature to, any office of trust, profit, honor or emolument, created by any law passed by the legislature of which he is a member. Any appointment made in violation of this section shall be null and void and without force and effect, and any attempt to exercise the powers of such office by such appointee shall be a usurpation, and the appointee shall be deemed guilty of a misdemeanor, and, on conviction, shall be fined not less than five hundred dollars nor more than five thousand dollars."

*In limine,* it is proper to state that this is a *quasi*-criminal proceeding, as it is provided by said section 251 that an attempt to exercise the powers of such office by such an appointee shall be a usurpation, and the appointee shall be deemed guilty of a misdemeanor and on conviction shall be

fined not less than $500 nor more than $5,000. In *People v. Green,* 1 Ida. 235, it was held that statutory proceedings in the nature of *quo warranto* were *quasi* criminal in character. (Disqualifications for holding office will not be extended to persons who do not come clearly within the scope of the statute or constitutional provision making such disqualification.) (29 Cyc. 1380.) Many states have provisions similar to those found in sec. 251, either in their statutes or in their constitution. The proposition of the disqualification of certain persons to hold office was considered at considerable length by the framers of the federal constitution, and as a result of their deliberations we have clause 2 of sec. 6, art. 1, of the federal constitution, which provides that no senator or representative shall, during the time for which he was elected, be appointed to any civil office under the authority of the United States which shall have been created or the emoluments whereof shall have been increased during such time, and that no person holding any office under the United States shall be a member of either house during his continuance in office. In commenting upon said provisions, Story, in his work on the Constitution of the United States, sec. 867, says:

"The reasons for excluding persons from offices who have been concerned in creating them, or increasing their emoluments, are to take away, as far as possible, any improper bias in the vote of the representative and to secure to the constituents some solemn pledge of his disinterestedness."

We think Judge Story there states the clear intent and purpose of such statutory and constitutional provisions. That intent clearly appears from the provisions of said sec. 251, for by it the legislator is ineligible to appointment to an office, the creation of which was an act of the legislature of which he was a member. If the legislature of which the defendant was a member created the office of highway commissioner of Shoshone District No. 2, the prohibitions contained in said sec. 251 are applicable to this case.

The word "create" means to cause to exist or to bring into existence something which did not exist. Said highway dis-

trict law does not create or purport to create any highway districts, but leaves the creation of such districts with the people. Then the question is directly presented: Did the legislature create the office of highway commissioner of Shoshone Highway District No. 2?

At the time the legislature which enacted said highway district law adjourned, there was no office of highway commissioner of Shoshone Highway District No. 2, nor was there such an office in the state of Idaho. Said act authorized the electors and land owners in the state to organize a highway district upon certain terms and conditions, if they concluded best to do so. The organization of such district requires a number of things to be done by the electors and land owners of the territory to be included therein, to wit: That a petition be signed by a certain number of the residents of such proposed district, and a map showing certain facts must be filed with the clerk of the board of county commissioners of the proper county; that upon the filing of such petition and map, the clerk is required to publish a notice of election to be held in such proposed district for the purpose of determining whether or not the same shall be organized as a highway district under the provisions of said act. The notice is required to be published once a week for three successive publications prior to the election. Such election is required to be conducted as nearly as practicable in accordance with the general laws of the state, except that the provisions of the general election laws as to the form and distribution of ballots shall not be applied and no previous registration shall be necessary. The board of county commissioners is required to establish as many election precincts within the proposed highway district as may be necessary, and define the boundaries thereof. After such election the judges of said election are required to forward the official results to the clerk of the board of county commissioners. The board is required to meet within ten days after said returns are received and canvass the same, and if it is ascertained that more than one-half of the votes cast are in favor of the highway district, said board is required to enter an order on its

minutes declaring such territory duly organized as a highway district under the name designated in the petition. It will thus be observed that many things are required to be done by the electors of the proposed district in order to perfect the organization of the district, and until all of those acts are done and performed and the board of county commissioners has canvassed the result of the election and declared the territory included therein duly organized as a highway district, the office of highway commissioner does not exist therein.

Had the act in question organized certain highway districts and provided that such districts should have certain officers, then the legislature would have created the office. But the legislature by said act did not attempt to create any districts whatever. They left the creation of the district with the people. The purpose of said sec. 251 was to prevent the creation of offices by the legislature for the benefit of members of the legislature that created them. It was intended to prevent trafficking in such offices by members of the legislature and the governor. While it is true said highway district act was passed by the legislature and the organization of a highway district would not have been valid without it, yet there was no office of highway commissioner until the people had acted and the district was created, and no such office could come into existence without the vote of the people. In this case it took the action of the legislature *and* the vote of the people to create the office. The people under said act created the highway district and thereby brought the office of highway commissioner into existence. The electors, in one sense, created the office by organizing the district, and until they did that the governor had no power to appoint. If the people had declined to create the district, there would not have been such an office as highway commissioner. Had the district been created by said act, the office would have been created at the time said act became a law. But it must be conceded that until the people acted under the provisions of said law, no district was created, and therefore no office of highway commissioner existed within the state until the people acted and organized such district. Keeping

in mind that this is a *quasi*-criminal proceeding and that the provisions of said section should not be extended to include persons not clearly within its scope, we hold that said office is not one coming clearly within the provisions of said sec. 251. )

In *Brady v. West,* 50 Miss. 68, the court had under consideration an act of the legislature of that state which created the county of Tate out of portions of several other counties, and empowered the governor to appoint the clerk of the chancery court in the new county. The governor appointed one Brady, who was a member of the legislature which created the new county. An election, however, had been held, and one West was elected to said office, it being claimed that said office was an elective office under the constitution. West brought a proceeding in *quo warranto.* The constitution of Mississippi provided for the office of clerk of the chancery court of the several counties, and it was insisted upon the part of Brady that the act creating said new county did not create the office of chancery clerk, but that it was created by the constitution of the state. In discussing that question the court said:

"Upon reference to the constitution, we find the 19th section of article 6 provides that the clerk of the supreme court shall be appointed by said court for the term of four years, and the clerk of the circuit court and the clerk of the chancery court shall be elected by the qualified voters of their several counties, and shall hold their office for the term of four years. This does not create the office, but presupposes the office to exist, and prescribes the manner in which it is to be filled in counties fully organized. The office of clerk of the chancery court is a county office, and, in the nature of things, it cannot exist until the county exists. It springs into existence upon the creation of the county and the extension of the chancery system to it. It cannot be said, with any propriety of language, that the office of clerk of the chancery court of Tate county existed before that county was created, and before it had a chancery court, and the act which created the county gave it a chancery court," and held that Brady,

having been a member of the legislature that created said office, was disqualified from holding it during the continuance of his said term as a member of the legislature. In that case the court held that the office of clerk of the chancery court sprang into existence upon the creation of the county. So in the case at bar. The office of highway commissioner of Shoshone District No. 2 did not exist, and in the nature of things could not exist, until the district was created by a vote of the people, and the office sprang into existence upon the creation of the district.

In the case of *State ex rel. Attorney General v. Porter,* 1 Ala. 688, the court had under consideration an act of the legislature which established a tenth judicial circuit, and the constitution of that state provided that the state should be divided into judicial circuits. The judges of the circuit courts of that state were elected by the members of the legislature. The respondent was a member of the legislature and was by it elected to the office of circuit judge of said tenth circuit, and his contention in said *quo warranto* proceedings was that the office of judge of the circuit court was created by the constitution and the court held that the particular office involved in that case was the judge of the tenth circuit and that that office came into existence when the legislature created the circuit, and that as the respondent was a member of the legislature that created said circuit, he was ineligible to said office. In the course of the decision the court said:

"Thus it will be seen that the constitution, instead of dividing the state into circuits, and creating the office of circuit judges, devolved that duty upon the legislature, to be exercised as the increase of counties and population might render it expedient.

"Until the act of the 31st of January, 1840, there was no circuit designated as the tenth; but the statute creates the circuit, and requires that a judge thereof shall be elected. Had the two houses of the General Assembly elected such an officer previous to that enactment, the election would have

conferred no authority upon the appointee nor have entitled him to the emoluments of office.''

The analogy between the Alabama case and the case at bar is this: The constitution of Alabama provides for a circuit judge in each judicial circuit and leaves the legislature to create the circuits whenever it concludes that it is expedient to do so.   In the case at bar the legislature provides for high-way commissioners, but leaves the creation of districts to a vote of the people, and the office of highway commissioner does not in fact exist and is not created until the people have acted and organized the district.

The judgment must be affirmed, and it is so ordered. Costs are awarded to respondent.

Stewart, C. J., and Ailshie, J., concur.