# THE MAYOR AND COMMISSIONERS OF WESTERNPORT et al.

### vs.

# JOHN O. J. GREEN.

*Office—Creation by Legislature—Increase of Salary—Eligibility of Senator or Delegate—Provision of Constitution.*

In providing a different method of electing the town clerk of Westernport, and in imposing on him the additional duty of collecting taxes, the Legislature did not create an office within the meaning of Constitution, art. 3, sec. 17, making a senator or delegate ineligible to an office created during his term.　p. 87

The charter of Westernport having originally provided that the Mayor and Commissioners should allow the town clerk such compensation as they may think proper, an amendment, providing that they shall fix the rate of compensation which the clerk shall receive, did not increase the salary or profits of the office within the meaning of the constitutional provision making a senator or delegate ineligible to any office the salary or profits of which shall have been increased during his term, and that the salary was thereafter increased by the Mayor and Commissioners was immaterial.　pp. 87-89

There is a presumption in favor of the eligibility of one elected or appointed to a public office, and before his removal can be compelled by mandamus, his constitutional or statutory disqualification should be clearly apparent.　p. 89

*Decided June 27th, 1923.*

Appeal from the Circuit Court for Allegany County (DOUB, J.).

Mandamus proceeding by J. O. J. Green against the Mayor and Commissioners of Westernport, to which proceeding Charles F. Peters, clerk, was made a party defendant. From an order directing a writ of mandamus to issue, defendants appeal. Reversed.

The cause was submitted on briefs to Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Adkins, and Offutt, JJ.

*Horace P. Whitworth,* for the appellants.

*Saul Praeger,* for the appellee.

Urner, J., delivered the opinion of the Court.

As a Delegate from Allegany County, Charles F. Peters was a member of the General Assembly when the charter of Westernport was amended by Chapter 85 of the Acts of 1922. The amendment had in part the effect of changing the method of electing the clerk of the town and of imposing upon that official the duty, previously performed by the bailiff, of collecting the municipal taxes. Prior to the Act of 1922, the clerk was elected by the voters of the town, but that statute provided that he should thereafter be chosen by the Mayor and Commissioners, who were also authorized and directed to prescribe the amount and obligation of the clerk's bond and his "rate of compensation" and duties. After the passage of the amending act, and during the term for which Mr. Peters had been elected as a Delegate in the General Assembly, the Mayor and Commissioners of Westernport increased the salary payable to the clerk of the town and appointed Mr. Peters to that position. In this mandamus proceeding for his removal from the office, the question is whether he is disqualified to accept and hold it in view of the following provision of the State Constitution (article 3, section 17):

> "No Senator or Delegate, after qualifying as such, notwithstanding that he may thereafter resign, shall during the whole period of time for which he was elected be eligible to any office which shall have been created, or the salary or profits of which shall have been increased, during such term."

The eligibility of Mr. Peters to the office of clerk of Westernport is disputed on two grounds, first, that the office was

created by the Act of 1922, passed during his term as a member of the General Assembly, and, secondly, that the salary of the position was increased during that period. The first of these theories was rejected by the court below, but the second was accepted as a sufficient basis for a decision that Mr. Peters is ineligible to the clerkship.

With the conclusion that the office was not created by the Act of 1922 we can agree. The effect of that statute was not to bring a new office into existence. To "create" is to bring into being or cause to exist, as the term is commonly understood and defined. 2 *Words and Phrases,* 1708. It was applied in that generally accepted sense by the Supreme Court of Idaho, in the construction of a constitutional provision, relating to eligibility to office, in *State* v. *Gooding,* 22 Idaho, 128. The position of clerk of the municipality of Westernport has existed since the original enactment of its charter by chapter 33 of the Acts of 1886. One of the charter provisions, which the Act of 1922 did not amend, is a direction that the Mayor and Commissioners "shall define the duties of the clerk and allow him such compensation for his services as they may think proper." In providing a different method of electing the clerk and in imposing upon him the additional duty of collecting taxes the Legislature was not *creating* the office within the meaning of the Constitution.

The decision below that Mr. Peters was ineligible to the municipal clerkship because of the increase of the salary was influenced by the view of the court that the increase was virtually directed by the statute passed during his legislative term. Unless such an effect is attributable to the statute, the action of the municipal authorities in augmenting the salary would not, within the spirit and purpose of the Constitution, render ineligible to the office of clerk a legislator who participated in the passage of the act. It was the obvious intent of the Constitutional provision we have quoted to protect the members of the Legislature from the influence, upon their judgment and conduct, of any personal interest in the creation of new offices or the increase of the salaries

or emoluments of any offices previously created. When the provision referred to was under discussion in the Constitutional Convention of 1864, Mr. Stockbridge, in proposing an amendment which would have reduced the section to its present form by eliminating a clause relating to executive or legislative appointments, said:

> "I submit this amendment under the belief that this section, as it will stand if so amended, will be sufficiently broad to cover the evil at which the restriction or prohibition upon the members of the General Assembly is aimed. It will prohibit any person, being a member of either branch of the General Assembly, from legislating to create any office, or to increase the salaries or profits of any office, in order that he may be benefited by it; while it will not restrain the Executive from appointing a man to a position for which he may happen to be particularly qualified, and which may have previously existed, in which a vacancy may have occurred."

In the discussion of a provision of the same nature in the Constitution of the United States, it is said in *Story on the Constitution*, section 867: "The reason for excluding persons from offices who have been concerned in creating them or increasing their emoluments, is to take away, as far as possible, any improper bias in the vote of the representative and to secure to the constituents some solemn pledge of his disinterestness." Construing such a provision in the constitution of Wisconsin, the Supreme Court of that state said that it had the effect of "forbidding the election or appointment of members of the legislature to offices created or rendered more lucrative by themselves during the term for which they were elected such members."

The ineligibility to which the Constitution refers, in the section cited, was evidently designed to be produced only by action in which the legislators to be affected by the provision could have participated. If the Legislature of which they were members made no provision for the creation of an office,

or the increase of the salary of one, with respect to which their eligibility might be questioned, there would be no reason to apply to them the constitutional disqualification.

The view just expressed was also adopted by the lower court, but in its conclusion that the salary of the office under consideration was, in effect, increased by the Act of 1922, we are unable to concur. That act, in our opinion, did not invest the Mayor and Commissioners of Westernport with any broader power in regard to the clerk's compensation than they previously possessed under the municipal charter. By the unamended provision which we have already quoted they were directed to allow the clerk such compensation for his services as they considered proper, and an increase of salary equivalent to that with which this case is concerned might have been provided under that prior delegation of authority. The Act of 1922 did not direct that the salary of the office should be increased, but simply provided that the Mayor and Commissioners "shall fix the rate of compensation" which the clerk is to receive. In the exercise of the discretion involved in the performance of that duty the Mayor and Commissioners might have reduced the amount of the compensation. The increase of the salary was certainly not a necessary consequence of the enactment of the statute on account of which this proceeding was instituted.

There is a presumption in favor of the eligibility of one who has been elected or appointed to a public office. 22 *R. C. L.* 400. Before his removal can be compelled by mandamus his constitutional or statutory disqualification should be clearly apparent. In this case the alleged ineligibility is not sufficiently demonstrated to require us to declare the appointment invalid. It will, therefore, be necessary to reverse the order for the writ of mandamus which directed the office to be vacated.

*Order reversed, with costs, and petition for mandamus dismissed.*