**STATE of North Dakota ex rel. H. W. LYONS**

v.

**William L. GUY and Orville Hagen.**

No. 7935.

Supreme Court of North Dakota.

Jan. 18, 1961.

Hjellum, Weiss, Nerison & Ottmar, Jamestown, for relator.

Myron H. Bright and Mart R. Vogel, Fargo, and William S. Murray, Bismarck, for respondent William L. Guy.

MORRIS, Judge.

The relator, H. W. Lyons, presented to the Attorney General of the State of North Dakota a written request asking that officer to institute an original quo warranto proceeding in the Supreme Court against William L. Guy and Orville Hagen to determine their respective rights to the office of governor of the State. The Attorney General refused in writing to institute the requested proceedings, whereupon the relator presented to this Court an application as a citizen and resident of the State of North Dakota and an elector and taxpayer thereof for leave to file an information in the nature of quo warranto in the Supreme Court, praying for a determination of the respective rights of the respondents to the office of governor.

The Supreme Court issued its order to show cause, directed to the respondent William L. Guy, why the request of Lyons should not be granted, and required service to be made on both respondents. The respondent Guy filed a return. The respondent Hagen made no appearance. The matter was heard at the time set in the order to show cause. We now proceed to determine whether we should permit the filing of the information.

The pertinent parts of the information set forth that at the general election held throughout the State of North Dakota on November 8, 1960 William L. Guy received the highest number of votes cast for the office of governor, that thereafter a certificate of election was issued to him, and

he filed his oath of office as Governor of the State. It is also stated that the respondent Orville Hagen received the highest number of votes for lieutenant governor, was issued a certificate of election, and qualified for that office by filing his oath. The information next sets forth Section 39 of the North Dakota Constitution which provides a restriction on the eligibility of a member of the legislative assembly to be appointed or elected to civil office in the State during the term for which the legislator was elected.

Paragraph 6 of the information sets forth the details of relator's challenge to the right of the respondent Guy to hold the office of governor. We quote it:

"That the Respondent, William L. Guy, was a duly elected, qualified and acting member of the House of Representatives of the North Dakota legislative assembly from District 11, Cass County, North Dakota, for a term of office commencing on the 6th day of January, 1959, and terminating on the 2nd day of January, 1961; that during said term of office the emoluments of the office of Governor of the State of North Dakota were increased as follows:

"(a) By the passage of Senate Bill No. 1, Chapter 1, of the North Dakota Session Laws of 1959 wherein under Subdivision 17, thereof an appropriation in the sum of $4500.00 was made by the North Dakota legislative assembly for the purchase of a car for the use of the Governor of the State of North Dakota and pursuant thereto a car was purchased on or about July 18th, 1959;

"(b) By the passage of Senate Bill No. 33, Chapter 33 of the North Dakota Session Laws of 1959, which provided in part as follows, to-wit:

"'The governor * * * shall * * * be paid the sum of $1500.00 for each calendar years of 1959 and

1960 for expenses and moneys expended while engaged in the discharge of official duties, to be paid in quarterly payments by the state auditor without the filing of any itemized voucher or statement * * *.'

and by the appropriation of funds with which to pay the same.

"(c) By passage of Senate Bill No. 195, Chapter 359 of the North Dakota Session Laws of 1959:

"1. Which increased by the sum of $600.00 the remuneration of the Governor of this State upon which Social Security assessments shall be levied.

"2. Increased by one-half of one percent the Social Security tax contribution paid by the State of North Dakota on behalf of the Governor of this State."

The relator then states that because of the increases provided in the emoluments of the office of governor, as above set forth, during the term of the respondent Guy as a member of the legislative assembly, he was under legal disability and barred from being elected to the office of governor of the State at the election of November 8 and that his purported election is illegal and void. The respondent prays that William L. Guy be ousted from and restrained from occupying and conducting the office of governor and that this Court declare and fix the rights, status and legal relations of the respondents Guy and Hagen to the office of Governor of the State.

In resisting the relator's application for leave to institute proceeding in the nature of quo warranto, the respondent urges two grounds: first, that the relator is acting in an individual capacity and as such has no right nor should this Court permit him to institute quo warranto proceedings in the Supreme Court to challenge the respondent's right to the office of governor; second, that none of the three charges set forth in Paragraph 6 of the proposed information constitutes a violation of Section 39 of the Constitution and therefore the information states no grounds for the institution or maintenance of quo warranto proceedings challenging the right of the respondent Guy to hold office.

In support of the first ground of his resistance to the filing of the information the respondent urges that the Attorney General of the State of North Dakota in his official capacity represents the State and its people, and that the relator who does not show a special interest, such as being a claimant to the office of governor, but appears only as a citizen, resident, elector and taxpayer of the State, should be regarded as an intermeddler and not one who is entitled to maintain quo warranto proceedings.

Section 87 of the North Dakota Constitution vests in the Supreme Court power to issue original and remedial writs. Among those enumerated is the writ of quo warranto. It is not contended that this Court does not have the power to issue a writ when such a proceeding is instituted by a proper party.

In State ex rel. Conrad v. Langer, 68 N.D. 167, 277 N.W. 504, 514, we said with respect to the exercise of original jurisdiction that:

"Inasmuch as an original proceeding in this court can be maintained only where the matter involved affects the sovereign rights of the state or its franchises or prerogatives, or the liberties of the people, it naturally follows that ordinarily the application to this court for a prerogative writ should be made by the Attorney General as the chief law officer of the state. However, the failure of the Attorney General to make such application is not a bar; and where the Attorney General refuses to institute the proceeding, the court, when the facts warrant, may and will grant a private relator leave to institute it. But in no case (except in a habeas corpus proceeding) can or

will the original jurisdiction be exercised on the application of a private relator unless the Attorney General has been requested to move and has refused or unreasonably delayed so to do."

■■ The power vested in the Supreme Court by Section 87 of the Constitution to issue original and remedial writs is a discretionary power which no one is entitled to invoke as a matter of right. As to quo warranto proceedings it is limited to cases involving the sovereignty of the State, its prerogatives or franchises or the liberty of a citizen, and this court will determine for itself in each case whether that particular case is within its jurisdiction. State ex rel. Johnson v. Myers, 74 N.D. 678, 19 N.W.2d 745; State ex rel. Moore v. Archibald, 5 N.D. 359, 66 N.W. 234.

■ We have found no case in this State where an application to this Court for an original writ of quo warranto has been denied on the sole ground that the applicant was a private relator, but on the other hand it has been held that such a writ will not be issued at the request of a private relator except in very exceptional cases. State ex rel. Madderson v. Nohle, 16 N.D. 168, 112 N.W. 141; State ex rel. Walker v. McLean County, 11 N.D. 356, 92 N.W. 385. In State ex rel. Erickson v. Burr, 16 N.D. 581, 113 N.W. 705, 707, in a hearing upon an order to show cause why leave should not be granted to file an information in quo warranto and the Attorney General had refused to apply for the writ, the Court, in determining to entertain the proceeding, said:

"Irrespective of the matters of sole and personal interest to the relator, we have no hesitation in saying that a private relator's appeal for our assuming jurisdiction should be granted."

■ The relator has challenged the right of William L. Guy to occupy the office of Governor, the highest executive office of the State, for alleged constitutional disqualification. We will not dismiss the relator's application on the ground that he is a private relator whose interest in the proceeding sought to be instituted is that of a citizen, resident, elector and taxpayer of the State, and not otherwise, but will examine the proposed information to determine whether or not it states a prima facie case for the exercise of original jurisdiction. See State v. Nelson County, 1 N.D. 88, 45 N.W. 33, 8 L.R.A. 283; State ex rel. Moore v. Archibald, 5 N.D. 359, 66 N.W. 234; Duluth Elevator Co. v. White, 11 N.D. 534, 90 N.W. 12. In this instance to present a prima facie case the proposed information must state facts showing that the respondent is disqualified by Section 39 of the North Dakota Constitution from holding the office of Governor. That section provides:

"No member of the legislative assembly shall, during the term for which he was elected, be appointed or elected to any civil office in this state, which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected; nor shall any member receive any civil appointment from the governor, or governor and senate, during the term for which he shall have been elected."

The specific challenge here is that the respondent was a member of the House of Representatives of the State of North Dakota and that during his term in such office the emoluments of the office of governor were increased which rendered him ineligible to be elected governor during the term for which he had been elected a legislator.

Webster's New International Dictionary, Second Edition, defines the term "emolument" as "Profit from office, employment, or labor; compensation; fees or salary." It lists as obsolete the terms "Advantage; benefit." The majority of the Supreme Court of Washington, in State

ex rel. Todd v. Reeves, 196 Wash. 145, 82 P.2d 173, 175, 118 A.L.R. 177, said:

"This definition is substantially the same as that found in the decisions of the courts. That the word was employed in the constitution in its ordinary sense, as implying actual pecuniary gain, rather than some imponderable and contingent benefit, can hardly be questioned."

Some authorities include the term "perquisite" as a part of the definition, but that term also implies pecuniary gain or profit.

We now direct our attention to the specific charges of constitutional violation set forth in the proposed information. The first deals with an automobile. Subdivision 17 of Section 3, Chapter 1, Session Laws N.D.1959, appropriated to the Board of Administration for "Car for governor—$4,500.00." No previous legislature had made a similar appropriation.

■ Provisions for the expense of travel of public officers while engaged in official business or reimbursement to them for the expenses of such travel constitute neither salary nor emolument. McCoy v. Handlin, 35 S.D. 487, 153 N.W. 361, L.R.A.1915E, 858, Ann.Cas.1917A, 1046; Manning v. Sims, 308 Ky. 587, 213 S.W.2d 577, 5 A.L.R.2d 1154; 43 Am.Jur., Public Officers, Secs. 368 and 369. North Dakota has for many years borne the expense of the transportation of state officers while necessarily engaged in the performance of official duties and has recognized that such travel may be either by a state-owned conveyance or by public or private transportation. When travel is by other than a state-owned conveyance the officer is reimbursed on a mileage basis and it is specifically provided that when the travel is by a state-owned conveyance no allowance shall be paid for mileage. Section 54-06-09 NDCC.

Section 39-01-03 NDCC provides that:

"No person, officer, or employee of the state or of any department, board, bureau, commission, institution, industry, or other agency of the state, shall use or drive any motor vehicle belonging to the state or to any department, board, bureau, commission, institution, industry, or other agency of the state for private use, or while engaged in any political activity."

This has been the law of the State since March 15, 1949. (Chapter 238, Session Laws N.D.1949.)

In Taxpayers' League of Carbon County v. McPherson, 49 Wyo. 251, 54 P.2d 897, 106 A.L.R. 767, the court considered the constitutionality of a statute passed after the sheriff's election providing for compensation at a reduced rate to any county officer for the use by him of his automobile in traveling within the county in performance of official duties. A provision of the Wyoming constitution provided that no law shall increase or diminish the salary or emolument of any public officer after his election or appointment. The court held that the statutory compensation for mileage was neither salary nor an emolument of the office within the meaning of the constitutional provision.

■ The appropriation under discussion provided for the purchase of an automobile by the Board of Administration for the use of the Governor. It was the property of the State. When he used it he was not entitled to mileage. The restrictions of Section 39-01-03 NDCC applied to its use to the same extent as to the use of any other motor vehicle owned by the State. The purchase of the automobile merely changed the mode of transportation available to the Governor. It did not increase the emoluments of his office.

The Thirty-sixth Legislative Assembly, of which the respondent was a member, enacted Chapter 33, Session Laws N.D.

1959, entitled "An Act to provide for payment of expenses to certain state officers, making an appropriation and declaring an emergency." It provided that the Governor, and certain other state officers named therein,

"in order to properly discharge their official duties shall each of them be ` paid the sum of $1,500.00 for each calendar years of 1959 and 1960 for expenses and moneys expended while engaged in the discharge of official duties, to be paid in quarterly payments by the state auditor without the filing of any itemized voucher or statement;
*  *  *"

The relator argues that this appropriation increased the emoluments of the office of Governor and although the appropriation expired before the present term of the office of governor began and therefore could in no manner increase any emolument of an incumbent of that office after the expiration of 1960, it nevertheless made William L. Guy ineligible to be elected although he would not be a recipient of any of the moneys appropriated. This contention calls for not only a strict but a harsh and technical construction and application of the constitutional provision. Before giving it such an application we are impelled to consider the purposes and objects that induced its enactment.

■ A cardinal rule of constitutional construction is that a constitution must be construed to give effect to the intention of the people who adopted it. Egbert v. City of Dunseith, 74 N.D. 1, 24 N.W.2d 907, 168 A.L.R. 621; Barry v. Truax, 13 N.D. 131, 99 N.W. 769, 65 L.R.A. 762, 112 Am.St.Rep. 662, 3 Ann.Cas. 191; State ex rel. Linde v. Robinson, 35 N.D. 417, 160 N.W. 514; City of Jackson v. Nims, 316 Mich. 694, 26 N.W.2d 569; State ex rel. Grigsby v. Ostroot, 75 S.D. 319, 64 N.W.2d 62; Ramsey v. Gage County, 153 Neb. 24, 43 N.W. 2d 593; Meredith v. Kauffman, 293 Ky. 395, 169 S.W.2d 37, 38. In the last case the court commented:

"Words are but imperfect vehicles designed to convey thought and in gathering the thought intended to be conveyed the purpose behind the words should be kept in mind. The Constitution is concerned with substance and not with form and its framers did not intend to forbid a common-sense application of its provisions."

■ Section 39 of the Constitution is clearly a restriction upon the members of the legislature. In order to determine the extent of that restriction we must consider the object to be sought by it. If there was an evil to be prevented or restrained, the nature of that evil may be considered in determining the motivating intention behind the adoption of the provision. E. K. Buck Retail Stores v. Harkert, 157 Neb. 867, 62 N.W.2d 288, 45 A.L.R.2d 774; Doremus v. Board of Education, 5 N.J. 435, 75 A.2d 880; Wolfson v. Avery, 6 Ill.2d 78, 126 N.E.2d 701, 710.

In Wolfson v. Avery, supra, the court said:

"The standards which apply in matters of constitutional interpretation have frequently been pointed out by this court. As we observed in People ex rel. Nelson v. Jackson-Hyland Building Corp., 400 Ill. 533, 81 N.E.2d 57`, 580, the meaning of constitutional language 'can best be ascertained by considering the purposes of the constitutional provision in which it appears' and courts should 'construe our constitutional clauses so as to give effect to the spirit in which they were adopted.' In Peabody v. Russel, 301 Ill. 439, 134 N.E. 148, 149 we said: 'It is a canon of construction well recognized, not only in this court but in courts of other jurisdictions, as it relates to statutes, that the chief purpose is to give effect to the intention of the Legislature. In seeking such intention courts are to consider the language used, the object to be attained, or the evil to be remedied. This may

involve more than the literal meaning of words. That which is within the intention is within the statute, though not within the letter, and, though within the letter, it is nevertheless not within the statute if not likewise within the intention. The same general principles to be applied in construing statutes apply in the construction of Constitutions.' If there is any distinction between the rules governing the construction of constitutions and the rules that apply to statutes, less technical ones are applied in construing constitutions."

Constitutional provisions similar to the one under consideration are common among the constitutions of the states. The following statement, often quoted by the courts in construing such provisions, is found in Story on the Constitution of the United States, Fifth Edition, Volume I, Section 867:

"The reasons for excluding persons from offices who have been concerned in creating them, or increasing their emoluments, are to take away, as far as possible, any improper bias in the vote of the representative, and to secure to the constituents some solemn pledge of his disinterestedness."

Among the cases subscribing to this interpretation of the purpose of the section we find State ex rel. Pennick v. Hall, 26 Wash.2d 172, 173 P.2d 153; Fyfe v. Mosher, 149 Mich. 349, 112 N.W. 725; Ellis v. Lennon, 86 Mich. 468, 49 N.W. 308; State ex rel. Ryan v. Boyd, 21 Wis. 210; Brady v. West, 50 Miss. 68; Montgomery v. State ex rel. Enslen, 107 Ala. 372, 18 So. 157; Mayor and Commissioners of Westernport v. Green, 144 Md. 85, 124 A. 403; State ex rel. Hawthorne v. Wiseheart, 158 Fla. 267, 28 So.2d 589.

In State ex rel. West v. Gray, Fla., 74 So.2d 114, in deciding that a state senator was eligible to be elected governor of Florida as against a challenge to his eligibility under a constitutional provision similar to our Section 39, the court stressed that under the facts there involved members of the legislature could not have been influenced by any personal interests in voting for a temporary increase in the governor's salary made by appropriation for the biennium.

If we assume for the purpose of pointing up this discussion that the appropriation provided by Chapter 33, Session Laws N.D.1959, was in the nature of emolument, it was one that inured solely to the benefit of the occupant of the governor's office in the years 1959 and 1960. The office was then filled by an incumbent and in event of a vacancy or vacancies would have been filled by a line of succession provided by the Constitution until the term expired. The respondent was not one of those successors. None of the money appropriated would ever be paid to an appointed or an elected successor. There was no possibility that the respondent in the slightest degree could have been influenced or induced by any direct or indirect benefit from the appropriation to vote for it or favor its passage. His eligibility or ineligibility to be elected governor has no connection with the purpose of Section 39 or the evils which it was intended to prevent or diminish. We therefore reach the conclusion that the appropriation did not constitute an emolument within the spirit or intent of Section 39 of the Constitution.

The last of the three grounds urged by the relator in support of his contentions of disqualification is based on Chapter 359, Session Laws N.D.1959. It increased from $4,200 to $4,800 that portion of the remuneration for employment upon which social security assessments are levied. The same act increased by one-half per cent the rate of contribution to be paid by the State. It is contended that these increases constitute an increase in the emoluments of the Governor.

Chapter 306, Session Laws N.D. 1955, provided for the coverage under the Old Age and Survivors Insurance provi-

sions of Title II of the Federal Security Act, as amended, 42 U.S.C.A. § 401 et seq., of officers and employees of the State who were eligible and elected to come under the Social Security Act, and established a social security fund. From that time on appropriations were made to pay the State's share of the contributions required to maintain social security coverage for the Governor and employees of the executive office. Any increase in the benefits to be derived from such coverage was provided by federal and not state law. Those benefits are remote and contingent. The contributions by the State as an employer are in the amount required by federal law. Neither the benefits provided under the social security system nor the contributions constitute emoluments within the meaning of Section 39 of the North Dakota Constitution.

We reach the conclusion that none of the acts of the Thirty-sixth Session of the Legislative Assembly set forth in relator's proposed information increased the emoluments of the office of Governor of the State of North Dakota as that term is used and intended in Section 39 of the North Dakota Constitution. The proposed information having failed to state prima facie ineligibility on the part of William L. Guy to be elected Governor of the State of North Dakota, the application to file the information is denied.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.